BONWIT, TELLER & CO. v. KINLEN. (No. 6631.)

(Supreme Court, Appellate Division, First Department. December 31, 1914.)

1. SALES (§ 52*)—CONTRACTS—WARRANTY.

Evidence *held* insufficient to support a defense that there was an agreement that, if the goods bought were unsatisfactory to the buyer, they could be returned, or that they were represented to be of high-grade material and quality.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 118–144, 1045; Dec. Dig. § 52.*]

2. SALES (§ 262½*)—CLOTHING—IMPLIED WARRANTY.

Where plaintiff sold clothing to defendant for his wife, the mere purchase was insufficient to raise a presumption that defendant relied on plaintiff's skill or judgment, or that of his salesman, and in the absence of proof that defendant notified plaintiff of the particular purpose for which the goods were required, and that he relied on plaintiff's skill and judgment, there was no implied warranty which survived acceptance that the goods were reasonably fit to wear, under Sales of Goods Act (Personal Property Law, art. 5 [Consol. Laws, c. 41, as amended by Laws 1911, c. 571]) § 96.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 740–748; Dec. Dig. § 262½.*]

Appeal from Appellate Term, First Department.

Action by Bonwit, Teller & Co. against James E. Kinlen. From an order of the Appellate Term (85 Misc. Rep. 62, 147 N. Y. Supp. 54) affirming a judgment of the Municipal Court in favor of defendant, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Arthur B. Hyman, of New York City, for appellant.

Julius S. Belfer, of Brooklyn, for respondent.

DOWLING, J. The action is brought to recover the price of a certain waist and dress of the agreed value of $125 and for $4 for alterations thereon. The defense was that the merchandise furnished was represented to be of high-grade material and quality, and that, if unsatisfactory to the purchaser, it would be returned; that in fact the merchandise was defective and of inferior quality and unsatisfactory to the purchaser, whereupon it was returned immediately upon discovery.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The defendant's wife, who made the purchase, testified as to a talk she had with the salesman from whom she purchased the dress as to whether it would wear well, but the salesman's answer to this she did not give. At another point in her testimony she said she asked the salesman if it would wear well, to which the latter replied: "Yes, it was the finest material they could put in the dress for the money." She then asked him if the material would turn gray, and it is admitted that it did not turn gray.

[1] It will be seen that this testimony, which is all she gave as to the conversations at the time of the purchase, absolutely fails to support the defense that there was an agreement that if the goods were unsatisfactory to the purchaser they could be returned, and falls far short, as well, of supporting the defense pleaded that the goods were represented to be of high-grade material and quality.

[2] There was proof that the waist purchased had developed pink spots in the lace trimming when washed, and that the dress contained what are termed "pulls," being a condition of the warp which was claimed, on the one hand, to be defects in the manufacture, and, on the other, to be due to its use by the purchaser during the three weeks that she retained it, in which period she admittedly wore it three or four times. The dress and waist bore evidence of their use by the purchaser. It is now sought to resist payment for the goods, which have been returned, upon the ground that under the Sales of Goods Act (article 5 of the Personal Property Law [Consol. Laws, c. 41, as amended by chapter 571, Laws of 1911]) § 96, there was an implied warranty, which survived acceptance, that the goods were reasonably fit to wear. In this case there is no proof to satisfy the statutory requirements that the buyer must make known to the seller the particular purpose for which the goods are required, and must rely on the seller's skill or judgment. In the case of the waist, no questions whatever were asked. In the case of the dress, the only question was: Would it wear well? The claimed defect was one which could be detected by examination. The dealer had examined it, through his employé, before the sale, and claimed no defect existed. The objection urged is, not that the dress was not fit to wear or that it would not wear well, but that the material was not as good as it should have been in a garment offered for sale at such a price. I do not believe a mere purchase from a retail dealer sufficiently raises a presumption that the buyer relied on the skill or judgment either of the seller or his salesman. So to hold would wipe out the whole doctrine of caveat emptor, which the act in question contains no indication of legislative intent to accomplish. The general principles applicable to sales of personal property at common law were thus stated in Howard Iron Works v. Buffalo Elevating Co., 113 App. Div. 570, 99 N. Y. Supp. 163 (affirming an opinion of Bissell, referee), affirmed without opinion 188 N. Y. 619, 81 N. E. 1166:

"The rule of common law (caveat emptor), and not the rule of civil law (caveat venditor), applies to all sales of personal property in the state of New York, whether executed or executory. But to this rule, as to all rules of law, there are certain well-grounded exceptions recognized by our courts. The first exception is that where the seller is the manufacturer of the goods

sold, whether the contract is executed or executory, there is an implied condition or warranty that the article sold shall be fit for the purpose for which it is sold, if the particular purpose be specified, and that it shall be free from any internal defect which renders it unfit for the purpose specified. Second. In the case of an executory contract for the sale of goods of a particular kind, where the goods are either not in existence at the time of making the contract, or are subsequently to be procured and delivered, or are to be shipped thereafter from a distant point, the purchaser having no opportunity to examine, there is an implied warranty or condition that the goods, when delivered, shall be merchantable and of the kind and description specified. Third. Where, in a contract for the sale of personal property, either executed or executory, the purchaser relies entirely upon the judgment of the seller, describes the article desired and the purpose for which it·is desired, and leaves it entirely to the judgment of the seller to select and deliver the required article, there is an implied condition that the article shall be fit for the purpose disclosed to the seller. This doctrine does not rest upon the theory of the warranty as a collateral agreement, but it is a part of the contract itself that the seller will procure and deliver the particular thing required, and the parties deal upon the theory that, the purchaser relying entirely upon the judgment of the seller, the seller, in selecting and delivering an article other and different from the one ordered, simply fails to comply with his contract."

The second section referred to in the opinion just quoted, covering a sale by description, is embraced in subdivision 2 of section 96 in our present statute. The first and third exceptions are embraced in subdivision 1 of the same section. Concededly the present case does not come within the scope of the second subdivision, but it is claimed that it does fall within the first one. Section 96, so far as it is relevant to the present appeal, reads as follows:

"Implied Warranties of Quality.—Subject to the provisions of this article and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell, or a sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

It is claimed that although all that the seller knew was that the goods were sold to be worn, and although there is no proof that the buyer relied on the seller's skill or judgment, still such a reliance can be inferred, and the statement made by the salesman that the material was the finest that could be put in the dress for the money was a warranty that the goods were fit for use.

"The provisions of the Sales Act are copied from the English statute, and the English statute was intended to express the common law of England as it existed at the time the act was passed. It may therefore be supposed that the liability of a seller under the Sales Act will be somewhat greater than that imposed by the common-law jurisdiction of many jurisdictions in this country." Williston on Sales, p. 335.

We are not referred to any English decision which goes so far as to hold that in a sale by a dealer there is any warranty that the goods are the best that can be furnished in the market at the price paid for them, or that the material contained in a given article is the best that can be put into that article for the price at which it is to be sold.

Nor have we been referred to any case, either in England or in this country, which holds that, under any act resembling our statute, the dealer can be held for the breach of an implied warranty, where the buyer neither discloses any special purpose for which the goods purchased are to be used, nor shown reliance upon the dealer's skill or judgment, but simply claims that the goods are not of as high a quality as the buyer expected to get for the amount paid. We believe the defendant failed to bring himself within the provisions of the statute, and that he utterly failed to support the defense which he had pleaded.

The determination of the Appellate Term should therefore be reversed, with costs to the appellant, and the judgment of the Municipal Court reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.