## MARGARET F. FLYNN *vs.* BEDELL COMPANY OF MASSACHUSETTS.

Plymouth. March 8, 1922. — July 10, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Sale,* Implied warranty, Of fur. *Contract,* Implied. *Sales Act.*

Under G. L. c. 106, § 17, an implied warranty of fitness does not arise unless it appears that the buyer relies on the seller's skill or judgment.

If, in an action under G. L. c. 106, § 17, for breach of an implied warranty of fitness of a fur collar, there is evidence warranting the finding of the breach of an express warranty that the fur was black fox, undyed and guaranteed, the plaintiff is not limited to recovery upon such express warranty unless, as a matter of law, there is no evidence warranting a finding of breach of an implied warranty of fitness.

If, in an action under G. L. c. 106, § 17, against a dealer in furs for breach of an implied warranty of the fitness of a fur collar on a coat, it appears that the plaintiff, a woman, who was unfamiliar with furs, was shown by a salesman of the defendant a coat with a fur collar and that she asked what kind of fur it was and whether it was dyed fur and was told by the salesman that it was black fox and not a dyed fur, it cannot be said that there was no evidence to warrant a jury in finding that the plaintiff bought the collar in reliance upon the seller's skill and judgment that the fur collar was natural rather than dyed, and safe rather than unsafe and that the seller was reasonably apprised of that fact.

The scope of the implied warranty under G. L. c. 106, § 17, cannot be limited so as to exclude a warranty against the latent presence of foreign substances which are injurious in the course of the normal use of the article sold for the purpose intended.

At the trial of an action under G. L. c. 106, § 17, against a dealer in furs for breach of an implied warranty of fitness of a fur collar on a coat there was evidence that the plaintiff's skin was not delicate, nor sensitive, that she never had had skin trouble before wearing the collar, that her neck and face were blackened on each of the days she wore the fur and that a rash appeared on the day after the "crocking" occurred. There also was evidence from two physicians to the effect that the rash was caused by the fur. It also appeared that the examination made of the collar by the plaintiff could not reveal the "defect" of noxious substance in the dye. *Held,* that the trial judge rightly left the action to the jury on the question of an implied warranty.

CONTRACT OR TORT for personal ·injuries alleged to have been caused by a poisonous substance in a dyed fur collar purchased by the plaintiff from the defendant. Writ dated March 21, 1919.

The declaration contained two counts, the second count being for negligence and the first count for breach of warranty alleging

in substance that the plaintiff purchased a coat with a fur collar from the defendant; that the collar was guaranteed a fast color and warranted suitable to wear, but "that the said fur collar was not reasonably fit for the purpose for which the defendant had made known to your plaintiff, but the said coat with the fur collar was unfit for use and wear or to come in contact with the plaintiff's skin and unfit for use; and that said fur contained substances poisonous, noxious and wholly irritating and injurious to the skin; that as a result of the wearing of said fur collar and almost immediately and in consequence thereof the plaintiff's skin on the face, neck and body broke out in eruptions."

In the Superior Court the action was tried before *Bishop,* J. Material evidence is described in the opinion. At the close of the evidence, the plaintiff elected to go to the jury on the first count in the declaration and waived the count in tort. The defendant requested the judge to rule as follows:

4. "An implied warranty that the goods shall be reasonably fit for the purpose for which they are sold is fulfilled if it appear that the goods are reasonably fit for the large proportion of persons for whom they are intended."

6. "The plaintiff cannot recover in this case unless the jury finds that the defendant expressly guaranteed the kind and quality of this garment purchased and collar of same."

11. "If the plaintiff relied solely on the expressed statements of the defendant when she purchased this coat, there is no question of an implied warranty in this case."

The judge refused to give these rulings.

The defendant excepted to the following portion of the judge's charge:

"It is the duty of a person selling goods such as these to see that they are reasonably fit for the purpose for which they are being sold. That is, that they shall have no defects which will injure the person who is buying them, that the implied warranty does not go so far as to say they will wear six months or a year or two years, if such a thing is possible, but they are suitable for the use of a person who is buying for her own use and it is the duty of the defendant to see that there is no substance in these goods which would do injury to the person and it makes no difference if you find or if there should be in a coat which is sold a substance which

would not be injurious to seventy-five people or ninety people but might be injurious to ten people."

The jury returned a verdict for the plaintiff in the sum of $3,500; and the defendant alleged exceptions.

*H. B. Davis,* for the defendant.

*W. B. Grant,* (*J. B. Mahan* with him,) for the plaintiff.

DE COURCY, J.    The injuries to the plaintiff's face, neck and body, in the nature of a skin disease, were alleged to be due to poisonous or noxious substances, transmitted from the dyed fur collar on a coat purchased by her from the defendant in December, 1917.    The case was submitted to the jury on the count in contract; and there was no motion for a directed verdict.    The defendant made twelve requests for rulings, but has argued on its brief only those numbered 4, 6 and 11, and we treat the others as waived.    The main question argued is that founded on the judge's refusal to give the sixth and eleventh requests, and on the exception to his charge.    It is, in substance, whether there was any evidence for the jury of an implied warranty of fitness, within the provisions of the sales act (now G. L. c. 106, § 17).

The plaintiff testified that the saleswoman assured her that the fur was "black fox," and not dyed; that " we guarantee our goods," and if it was not all right she " could return the goods and get a refund."    The defendant admits, for the purpose of this argument, that these statements constituted an express warranty; and that there was evidence from which the jury might find a breach of the same.    See sales act, § 14.    But that does not necessarily negative the existence of an implied warranty, on which the case was tried.    Section 17, cl. 6 of the act provides "An express warranty or condition does not negative a warranty or condition implied under this chapter unless inconsistent therewith."    Hence the plaintiff was not limited to recovery upon such express warranty unless it can be said, as matter of law, that there was no evidence to justify the submission of the case to the jury upon the issue of an implied warranty of fitness under said § 17.

The requirement of cl. 1 is that "the particular purpose for which the goods are required" be made known to the seller.    The plaintiff wanted the coat for her personal wear, tried it on, and had the defendant make the slight alterations necessary.    That this partic-

ularizing was sufficient within the meaning of the statute, see *Gearing* v. *Berkson*, 223 Mass. 257; *Wallis* v. *Russell*, [1902] 2 I. R. 585, 598, 604, 613, 635; *Preist* v. *Last*, [1903] 2 K. B. 148.

An implied warranty of fitness does not arise however unless "it appears that the buyer relies on the seller's skill or judgment." The evidence bearing on this issue was meagre. The plaintiff entered the defendant's retail store, and asked the saleswoman "what she had in coats to fit" her, and said she would like "a brown velour." The clerk brought out some little coats, said they were desirable, and were to be sold at $25 for the day; and assured the plaintiff that there was not anything the matter with them, and that the low price was "just to advertise the opening." She overheard two women, who had returned a coat, complaining because "the color had discolored their skin." Thereupon she asked the saleswoman "What kind of fur is this collar?" and was told that it was black fox; and to the further inquiry "Is that a dyed fur?" was told that it was not. She further testified that she had absolutely no experience with furs prior to that time. Something more appears here than the ordinary choice of a ready-made garment, where the buyer relies wholly on her own selection as to material, color, style, etc. See *Bonwit, Teller & Co.* v. *Kinlen*, 150 N. Y. Supp. 966; *Farrell* v. *Manhattan Market Co.* 198 Mass. 271. The element of "fitness" was bound up with the question of whether the fur was dyed, and possibly contained latent defects dangerous to the wearer. It was from this that the injury to her ultimately flowed. And the plaintiff inquired specifically as to the nature of the garment in this respect. Notwithstanding that the plaintiff participated to some extent in the selection of the garment, we cannot say that there was no evidence to warrant a jury in finding that she bought in reliance upon the seller's skill and judgment that the fur in the collar was natural rather than dyed, and safe rather than unsafe; and that the seller was reasonably apprised of that fact.

In this connection it should be added that on the facts here disclosed there was no error in the judge's refusal to give the fourth request. It well may be that the scope of an implied warranty of fitness does not extend to fitness in respect of matters wholly unknown to the dealer and peculiar to the individual buyer. A seller of food presumably does not warrant that the particular

kind of food which the buyer calls for will be suited to his peculiar idiosyncracies. So, where there is no evidence of any intrinsically unhealthful feature in a fur, but only that the buyer is constitutionally unable to wear fur of this sort because of a supersensitive skin, the warranty of fitness presumably does not apply. *Bradt* v. *Hollaway, ante,* 446. But it appears that the particular "defect" which injured the plaintiff would have similarly injured any normal person. *Randall* v. *Newson,* L. R. 2 Q. B. D. 102. *Chaproniere* v. *Mason,* 21 T. L. R. 633. *The St. S. Angelo Toso,* 271 Fed. Rep. 245.

The scope of the statutory implied warranty cannot be limited so as to exclude a warranty against the latent presence of foreign substances which are injurious in the course of the normal use of the garment for the purpose intended. As was said by Gray, J., in *Dushane* v. *Benedict,* 120 U. S. 630, 646: "A warranty, express or implied, that rags sold are fit to be manufactured into paper, is broken, not only if they will not make good paper, but equally if they cannot be made into paper at all, without killing or sickening those employed in the manufacture." In that case the "defect" in the rags consisted in the presence of smallpox germs. In *Patterson* v. *Orangeburg Fertilizer Co.* 117 S. C. 140, the fertilizer contained a substance positively harmful to crops. See also *Frost* v. *Aylesbury Dairy Co. Ltd.* [1905] 1 K. B. 608, where germs of typhoid fever were contained in milk. *Gould* v. *Slater Woolen Co.* 147 Mass. 315, was an action based on negligence, not on warranty, and is not in point here. The same is apparently true of *Gerkin* v. *Brown & Sehler Co.* 177 Mich. 45, cited by the plaintiff. See Williston on Sales § 237.

There was evidence of the breach of the warranty of fitness. It could be found that the plaintiff's skin was not delicate or sensitive, and that she never had skin trouble before; that her neck and face were blackened on each of the days she wore the fur; and that a rash appeared on the day after the "crocking" occurred. And there was testimony by two physicians to the effect that this fur caused the trouble of which the plaintiff complained. Finally, it could not be ruled that such examination as she made of the garment ought to have revealed the "defect" of noxious substance in the dye. Sales act, G. L. c. 106, § 17, cl. 3. *Ward* v. *Great Atlantic & Pacific Tea Co.* 231 Mass. 90.

It follows that the trial judge rightly left the case to the jury on the question of an implied warranty. The exceptions disclose no reversible error, and must be overruled.

*So ordered.*