Catherine A. CUMBERLAND

v.

HOUSEHOLD RESEARCH CORP. OF AMERICA d/b/a White Cross Home Products Co. and Francis A. Nolan, d/b/a Copley Chemical Co.

Civ. A. No. 55–468.

United States District Court
D. Massachusetts.

Nov. 9, 1956.

W. Arthur Garrity, Jr., Maguire, Roche, Garrity & Maloney, Boston, Mass., for plaintiff.

Paul Frederick, Boston, Mass., for defendant Household Research Corp.

Thomas D. Burns, Boston, Mass., for defendant Francis A. Nolan.

ALDRICH, District Judge.

This is an action brought by a resident of Virginia, hereinafter called buyer, against Household Research Corporation, a Massachusetts seller, and one Nolan, a Massachusetts manufacturer, hereinafter called maker, of a household disinfectant whose tradename I will abbreviate to Pine. At the conclusion of the evidence defendants moved for directed verdicts, which were denied. The jury having returned verdicts for $5,000, the defendants now move for judgment n. o. v., or in the alternative, for a new trial.

■■ One ground of the first motion is alleged to be lack of the jurisdictional amount. Strictly, of course, I could not direct verdicts because of this, as that would mean a decision on the merits. Norwood Lumber Corp. v. McKean, 3 Cir., 153 F.2d 753. However, since absence of jurisdiction can be noted at any time, and "the mode of its determination is left to the trial court." Gibbs v. Buck,

307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111, I will treat the motions in this aspect as motions to dismiss.

■ The case is to be judged as of the time of bringing suit. The fact that the evidence may not have developed to justify a verdict of $3,000 is not determinative. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845. On the other hand, the ad damnum in the complaint does not control. At one time there appears to have been some thought that an excessive ad damnum was "an attempted fraud upon the jurisdiction of the court," see Barry v. Edmunds, 116 U.S. 550, 561, 6 S.Ct. 501, 507, 29 L.Ed. 729, which sometimes still carries over into discussions of the plaintiff's "good faith." See St. Paul Mercury Indemnity Co. v. Red Cab Co., supra, 303 U.S. at page 288, 58 S.Ct. at page 590. Yet it is clear, when the chips are down, that subjective good faith of a particular plaintiff is not the test. A study will be made of the facts, not of the plaintiff's state of mind. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; Food Fair Stores v. Food Fair, 1 Cir., 177 F.2d 177. The question is, simply, does it appear as a legal certainty, viewing the claim in its most favorable light, that $3,000 could not be recovered? The fact that the claim is unliquidated does not prevent a finding that it could not be. Wilderman v. Roth, 3 Cir., 17 F.2d 486; Nixon v. Town Taxi, Inc., D.C.D.Mass., 39 F.2d 618. Examining the instant claim in its most favorable light, however, I am not prepared to say that $3,000 was not involved, regardless of how I might feel about this particular verdict.

Turning to the merits, the plaintiff testified that she purchased a bottle of Pine disinfectant which stated on the label that it was useful for cleaning bathrooms, etc., but harmful if swallowed. No other caution was given. For washing floors, etc., the directions specified a certain number of spoonfuls per gallon of warm water. The plaintiff testified that on June 29, 1954, before she

784

opened her house "at the beach" she cleaned it from top to bottom, and spent two hours or more washing floors and woodwork with a solution of water, Spic and Span, and Pine. There was no evidence that it was harmful to add Spic and Span to Pine; nor did defendants' directions warn against including other ingredients. The evidence warranted a finding that no more Pine was used than the directions called for. During this washing the plaintiff had her hands almost constantly in the solution. She also splashed it on her feet, on which she wore open sandals. When she finished her hands were pink. Thereafter they became red, and began to burn "as if in an oven." Her arms and legs, also, became affected. Her condition was diagnosed as contact dermatitis, or an acute inflammation of the skin, due either to the Spic and Span, or to the Pine. She consulted a local doctor, and on July 9 and 12 visited a skin specialist, who gave her "small doses" of X-ray treatments. Her medical expense was $40. She also testified that she purchased various lotions and medications at a cost of about $90. For three weeks she said she stayed in bed, except when she was too nervous to remain there. Her skin blistered and swelled, particularly badly on the back of her hands, and discharged liquid. The irritation was intense. Her sleep was interfered with. On at least two occasions she screamed into her pillow. She cried when she went to the skin specialist. She testified that he described her as being in shock. At the end of three weeks her skin had entirely recovered, except for a scaly condition of the knuckles and back of the hands, but she testified she remained weak the balance of the summer, and never left the house. She modified this to not leaving the grounds, but insisted

she never went even to the beach. For five weeks her sister-in-law did the housework for her; for several months she was unable to do extra-heavy work, and she "did not get over the shock * * * until into the winter."

While I do not believe that substantial damages are unwarranted, I find it hard to recognize $5,000 as a reasonable figure even on the testimony in its most favorable light. I further believe plaintiff very considerably exaggerated her condition. It is of some significance that she had no medical treatment after July 14, which is not too compatible with the lengthy debilitation to which she testified. The skin specialist who she said told her she was "in shock," when asked whether her condition "involve[d] any pain," testified "No pain, but severe itching and discomfort." In contradistinction to her testimony that she paid $90 for medications, he testified that she had had penicillin, and that he prescribed a zinc lotion. Both she and her husband testified that their original demand upon the defendant seller's representative was only for medical expenses, which are insignificant compared with what she now claims was her injury, although these demands were made after she had already largely recovered, and made no mention of the substantial disability she now claims.[1] Furthermore, if the plaintiff suffered as badly as she claimed, I find it very difficult to understand her subsequent conduct in other respects. Through household get-together "parties" she had, as a part-time saleswoman for defendant seller, sold Pine and other products to her friends and personal acquaintances. She did not notify any of them, following her experience, of any dangerous qualities of Pine. In August, she said, she used Pine herself on a cloth which

1. "I stated to her that * * * I had gotten a very bad breaking out, and I had seen Dr. Kerr and had to come up for X-ray * * * and that I was going to * * * see if they would reimburse me for the money I had spent for medical expenses, for medicine and doctors."

"I told her my wife had a breaking out on her hands and they were swollen and she had to spend a lot of money as far as medicines and doctors, and wanted to know what White Cross would do. * * * [I just told her] her hands * * * were swollen and in a rash and very painful to her."

she held in her hand. This testimony, which assisted her to make a case against the defendants because she testified she received a reaction from it, thus eliminating the Spic and Span, seems almost incredible if, as she says, she suffered, and was perhaps still suffering such serious after-effects from her previous experience. Considering all of the above together, I am of opinion that the finding as to damages should not stand. I am not suggesting a remittitur because my action is in part based upon discretion with respect to credibility, and for another reason indicated below.

On the more fundamental matter of liability, the case against the seller depends upon an implied warranty of fitness, and an express warranty that Pine "will not injure the skin." Pine contains chlorophenyl phenol, which is not carbolic acid, but "is a stronger acid * * * presumably an irritant in the same sense that carbolic acid is known to be an irritant." There was no testimony as to how much stronger, or to what extent carbolic acid is "known to be an irritant," or, more exactly, whether chlorophenyl phenol was known to be an irritant in a 6% solution, which in turn was reduced to a few spoonfuls to a gallon of water. The record is devoid of any direct evidence that in this condition Pine was harmful to anyone except the plaintiff. The maker testified he had sold 70,000 bottles; that there were 100 gallons in this particular batch, and that he had never received a complaint before.

■■ Even an express warranty of harmlessness to the skin does not include one whose susceptibility is unique. See Flynn v. Bedell Co., 242 Mass. 450, 136 N.E. 252, 27 A.L.R. 1504. It must appear that the plaintiff belongs to a group of "some" size. Bianchi v. Denholm & McKay Co., 302 Mass. 469, 19 N.E.2d 697, 121 A.L.R. 460; Merrill v. Beaute Vues Corp., 10 Cir., 235 F.2d 893. However, a person is presumed to be normal, and this is enough to warrant such a finding, if not rebutted. Payne v. R. H. White Co., 314 Mass. 63, 49 N.E.2d 425; Flynn v. Bedell Co., supra. The

seller's motion for directed verdict must be denied.

■ The maker is in no better position. This defendant not only manufactured Pine; he bottled and sealed it. While his liability depends upon negligence, it can be found to be negligence not to anticipate harm which a product will cause to a normal person. Taylor v. Newcomb Baking Co., 317 Mass. 609, 59 N.E.2d 293. This applies to a manufacturer who has no direct relationship with the plaintiff, at least if its product may contain an irritant. Carter v. Yardley & Co., Ltd., 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559. The maker's motion for directed verdict, also, must be denied.

The inference that any one individual plaintiff is a normal person seems to me a relatively weak one. Plaintiff sought to strengthen it by testimony that she had had no prior skin trouble. However, one can be sensitive to one substance and not to another. Against plaintiff's testimony is defendant's that no other user had ever complained, which, if true, would seem to raise a very strong defense.

In deciding whether the verdicts ought to stand I am affected by the following circumstance. At the conclusion of my charge I said to the jury,

"You will have two verdict forms. As in other cases, where there is more than one defendant, whatever damages you find, if you find both defendants are liable, you will find the same amount for the plaintiff in each case, and the full amount—not half."

After the jury had been out less than an hour, the foreman addressed these questions:

"If we find for the plaintiff on both counts. Do we assess both defendants for an equal amount.

"If so will the plaintiff receive an amount equal to the total of the two assessments."

The jury's desire to vary the damages between the defendants suggests either

that it wanted to give extra large damages against one, or that it was particularly troubled about liability of one defendant. That enough jurors wanted to ask these questions when I had already explicitly answered them suggests, further, that they may have even to a greater extent forgotten the more complicated aspects of the charge. Since there must be a new trial on damages, I think it best that defendants' motions for new trial be allowed in their entirety.