ARCHIBALD TORRANCE *v.* DURISOL, INC.

SUPERIOR COURT        NEW LONDON COUNTY        FILE NO. 22532

Memorandum filed March 9, 1956.

*Gilman, Jacobson & Laudone,* of Norwich, for the plaintiff.

*Brown, Jewett & Driscoll,* of Norwich, for the defendant.

DEVLIN, J. The named plaintiff was awarded a contract for the construction of an elementary school by the town of Brooklyn. The defendant is the manufacturer of insulating roof plank known as Durisol and submitted a bid on the construction of the roof. On June 17, 1953, the parties entered into a contract wherein the defendant agreed to supply and install 18,200 square feet of its planking for $12,000. This was to be supplied in accordance with plans and specifications submitted. The defendant completed the job and was paid for the work in December of 1953. On July 7, 1954, the plaintiff re-

ceived a letter from the architects complaining of a sag in the roof. The defendant upon being contacted claimed the materials furnished and installed were according to the plans and specifications and refused to be concerned about the matter. As a result of the refusal of the defendant to remedy the situation, the plaintiff was called upon to place steel beams in the middle of the planks, cutting the span from eight to four feet.

The named defendant died on December 21, 1954, and the Connecticut Bank and Trust Company was appointed administrator with the will annexed and in this action is seeking to recover the moneys expended, claiming a breach of contract.

The plaintiff claims there was an express promise to supply materials free from defects; that there was an implied warranty that the material would be fit for its known purpose and free from inherent defects; and that the damage was the result of negligent and unskilful installation and defective materials furnished.

The defendant claims there were no warranties involved since the contract contained a clause that it represented the entire agreement between the parties and if there was any negligence involved in the installation it was that of the employees of the plaintiff.

The contract was approved and entered into in New York and contained a clause that it was to "become the entire agreement between the Buyer and Seller and will contain all representations and agreements." In view of this the defendant contends it is not bound by any implied warranties. Such an agreement does not preclude implied warranties. *S. F. Bowser & Co.* v. *McCormack,* 230 App. Div. 303. The Personal Property Law of New York is the same as ours in dealing with implied warranties and

provides that where the buyer makes known to the seller the particular purpose for which the goods are required and relies upon his skill and judgment there is an implied warranty that the goods shall be reasonably fit for such purpose. Even where he does not rely upon his skill and judgment there is a warranty of merchantable quality i.e., that they are reasonably fit for the purpose for which they were sold.

The planks were manufactured by the defendant specifically for this job. It was furnished with plans and specifications outlining the requirements. From these it charted the number and size of each plank. Lengths varied from two feet to eight feet. In the manufacture, care had to be exercised to provide against excessive deflection. The standard normal deflection for each sized plank was set out together with maximum and minimum figures. These varied on an eight-foot plank from a minimum of one-half of an inch to a maximum of three-fourths of an inch. The planks in question exceeded these standards. Some of them sagged one and one-fourths inches at the center, and the majority about seven-eights of an inch. This condition developed only after they had been installed for several months and at a time when the season of the year subjected them to high atmospheric temperatures. Expert testimony supported the claim that the planks were defective and unsuitable for their intended purpose and their continued use in the roof dangerous.

Defendant contends these warranties do not apply because the material involved was sold under a trade name and comes within paragraph 4 of the statute which provides that in the case of a contract to sell or a sale of a specified article under its patent or trade name, there is no implied warranty as to its fitness for any particular purpose. The mere fact that an article sold happens to have a trade name

does not, per se, bring the sale within the law relating to implied warranty of fitness. Whether it is so or not depends on the circumstances. *Foley* v. *Liggett & Myers Tobacco Co.,* 136 Misc. Rep. 468. Furthermore, this factor does not negative an implied warranty of merchantability from arising in the case of such a sale. In other words one cannot escape liability merely by attaching a trade name or patent name to the article. *Kelvinator Sales Corporation* v. *Quabbin Improvement Co.,* 234 App. Div. 96; *Frantz Equipment Co.* v. *Leo Butler Co.,* 370 Pa. 459.

Defendant also claims that if the material was defective, notice was not given within ten days as required by the agreement. Such a limitation should be determined in accordance with the rules of reasonability. If the defects are of such a kind as to be apparent on examination, such a contractual stipulation would be binding so as to bar recovery for open defects subsequently discovered. However, if the defect is a latent one and not readily discoverable on inspection but only upon use, no unreasonable provision in the contract as regards time for inspection and presentment of claims will be given effect so as to protect one from a proper action for breach of warranty. *Jessel* v. *Lockwood Textile Corporation,* 276 App. Div. 378.

Under the statute, however, notice of the breach of any warranty must be given within a reasonable time after the buyer knows or ought to know of such breach. What a reasonable time is presents a question of fact. *DeLucia* v. *Coca-Cola Bottling Co.,* 139 Conn. 65. Notification in this case was timely.

There is no basis for the finding of negligence or the existence of an express warranty. There is, however, sufficient evidence to support a breach of the first two implied warranties. The measure of damages for breach of warranty is the loss directly

and naturally resulting, in the ordinary course of events, from the breach. To remedy the situation additional materials in the amount of $3240.69 were required. Labor costs amounted to $4770.35, and architectural services of Buck and Buck, $425.

Judgment may enter on the issues of the complaint for the plaintiff to recover damages of $8436.04.