**John H. BEGLEY and Lawrence J. Sinnott, Plaintiffs-Appellees,**

v.

**FORD MOTOR COMPANY, Defendant-Appellant,**

and

**Empire Lincoln-Mercury, Inc., Defendant.**

**No. 321, Docket 72-1775.**

United States Court of Appeals, Second Circuit.

Argued Jan. 15, 1973.

Decided April 12, 1973.

William F. McNulty, New York City (Daniel J. Coughlin and Anthony J. McNulty, New York City, on the brief), for defendant-appellant Ford Motor Co.

Harold M. Hershman, New York City (Murray Weitman, Marvin H. Leicher and Hershman & Leicher, New York City, on the brief), for plaintiffs-appellees.

Before FRIENDLY, Chief Judge, and OAKES and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

Plaintiffs John H. Begley and Lawrence J. Sinnott commenced this diversity action in the Southern District of New York to recover damages for personal injuries sustained as the result of an automobile collision on the Connecticut Turnpike on April 22, 1966. Plaintiffs claimed that the 1965 Lincoln Continental in which they were riding home from work (Begley driving, Sinnott a front seat passenger) collided with the rear of another automobile, both proceeding eastbound, at the Greenwich toll station when the Lincoln's brakes failed to operate. The brake failure allegedly was caused by defective brake fluid supplied by defendant Ford Motor Company (Ford) through one of its dealers, Eastman Motors of Greenwich (Eastman Motors), the brakes having been tested a month prior to the accident by defendant Empire Lincoln-Mercury, Inc. (Empire). Plaintiffs' claims against Ford were based on negligence and breach of warranty in the manufacture of the brake fluid.

After a five day jury trial before Lloyd F. MacMahon, District Judge, verdicts in favor of Begley and Sinnott in amounts of $25,000 and $14,000, respectively, were returned against Ford. The jury also returned a defendant's verdict in favor of Empire. Only Ford has appealed. The issues raised on appeal are simple and straightforward. They involve the sufficiency of the evidence, the admissibility of certain expert testimony, and the propriety of portions of the jury charge. Finding no reversible error, we affirm.

I.

There was evidence at the trial from which the jury could have found as follows.

The Lincoln involved in the accident was owned by Great Lakes Carbon Corporation, of which Sinnott was an officer and Begley an employee. The vehicle was assigned to Sinnott for his use. It had been purchased from Eastman Motors in April 1965. Shortly after the purchase, Sinnott on several occasions complained to the service department of Eastman Motors that the brakes would not function until the pedal was close to the floorboard. On October 19, 1965, Eastman Motors made certain modifications to the braking system of the vehicle. This was done pursuant to a General Sales Bulletin, referred to as "Campaign L65–07", which Ford issued in September 1965 to its dealers and sales representatives. Sinnot took the vehicle back to Eastman Motors on January 11, 1966, at which time he complained that the brakes "were catching too close to the floor". On the morning of March 21, 1966—one month before the accident here involved —the vehicle experienced total brake failure on the East River Drive while in bumper to bumper traffic. It was taken to Empire's service station in mid-Manhattan where the braking system was checked and some new brake fluid which had been furnished by Ford was added to the existing fluid.

Employees of both Eastman Motors and Empire testified at the trial that they had received numerous complaints concerning the braking mechanism—particularly "a low brake pedal"—on other 1965 Lincoln Continentals.[1]

---

1. Ford was subpoenaed to bring to the trial in May 1972 its records of complaints concerning the braking mechanism on the 1965 Lincoln Continentals. Frank

Plaintiffs' principal witness at the trial was Roger Harvey, an expert in chemical engineering. Harvey had inspected the vehicle on May 25, May 27 and August 31, 1966, and had tested a specimen of brake fluid taken from the vehicle. He determined that the brake fluid contained 4.4 per cent water by volume which in his opinion indicated that the fluid was in a defective condition. He testified that, due to an excess of water, the boiling point of the brake fluid was only 250–280 degrees Fahrenheit rather than the normal 550 degrees. This meant, according to Harvey, that when the brakes became heated the water in the fluid would boil, thus creating a vapor lock in the hydraulic system; and the vapor lock would prevent the brakes from operating properly.

## II.

Ford's first contention is that plaintiffs failed to establish a prima facie case against it in either negligence or breach of warranty. Specifically, Ford argues that plaintiffs failed to show that the brake fluid which Harvey determined was defective was in that condition when supplied by Ford to its deal-

ers. In short, Ford says that there was insufficient evidence for submission of the case to the jury. We disagree.

After examining the record as a whole and viewing the proof in the light most favorable to plaintiffs, we are satisfied that the case was properly submitted to the jury. Park v. Village of Waverly, 457 F.2d 1139, 1140 (2 Cir. 1972), citing Hannan v. Schmitt, 18 A.D.2d 854, 855, 236 N.Y.S.2d 107, 108 (3d Dept. 1963) (court "must take the view of the proof most favorable to the verdict.")[2] Plaintiffs' essential claim is that Ford breached its implied warranty that the brake fluid supplied to its dealers was fit for the purpose of bringing the vehicle to a halt under normal driving conditions.[3] See Conn.Gen.Stat., §§ 42a-2-314 and 42a-2-315 (Rev.of 1958); Corneliuson v. Arthur Drug Stores, Inc., 153 Conn. 134, 136–40, 214 A.2d 676, 678–80 (1965); Torrance v. Durisol, Inc., 20 Conn.Supp. 62, 64–65, 122 A.2d 589, 591 (Super.Ct.1956) (breach of warranty); and Basko v. Sterling Drug, Inc., 416 F.2d 417, 424– 29 (2 Cir. 1969); Mitchell v. Miller, 26 Conn.Supp. 142, 145–50, 214 A.2d 694,

Graves, of the Inspection Service Division of Ford, testified that records of complaints more than two years old had been destroyed and no record had been kept of documents destroyed. Ford was aware that the instant lawsuit had been commenced on April 21, 1967, within one year of the accident.

2. In the instant case, as in Park v. Village of Waverly, *supra*, 457 F.2d at 1140 n. 1, the parties agree that state law should be applied in determining whether the case should have been submitted to the jury. In the context of motions in diversity cases for a directed verdict or for judgment n. o. v., both the Supreme Court and our Court have declined to decide whether the state or federal standard as to the sufficiency of the evidence is controlling. See Simblest v. Maynard, 427 F.2d 1, 4–5 (2 Cir. 1970), and authorities there cited. Compare Boeing Company v. Shipman, 411 F.2d 365 (5 Cir. 1969) (en banc). Since the New York courts would regard this as a procedural question on which

they would apply their own law, it is appropriate here to rely on the New York standard. As in Park v. Village of Waverly, *supra*, there is no contention that application of the federal rather than the state standard would require a different result.

3. There appears to have been no evidence adduced at trial tending to show that Ford had not exercised reasonable care in the manufacture or testing of the brake fluid. It therefore was error for the court to send the negligence cause of action to the jury with the instructions it gave. Nevertheless, we are satisfied that this was harmless error. The court's instructions on negligence and breach of warranty were virtually identical, except for the additional element in the negligence action of a need to prove lack of reasonable care. The jury could not have found for the plaintiffs on the negligence theory without also finding a breach of warranty.

696–98 (Super.Ct.1965) (strict tort liability).[4]

■ Plaintiffs adduced substantial evidence, through the testimony of Harvey, that the brake fluid which he tested was defective and not fit for the purpose of stopping the vehicle. Ford argues that, since brake fluid is hygroscopic (absorbs water), the water content of the fluid could have been increased after it left Ford's possession, through no negligence of Ford, and before it was tested by Harvey.

Viewing the evidence in the light most favorable to plaintiffs, as we must at this stage, plaintiffs adduced sufficient evidence to indicate that such absorption did not occur after the accident. Following the accident, the vehicle was kept inside a Greenwich garage. The sample tested by Harvey was first removed from the vehicle with a clean, dry battery syringe. An insurance investigator delivered the fluid to an attorney who, after marking it for identification, delivered it to Harvey in a clean, dry glass bottle sealed with a metallic cap.

There also was evidence that it was the inherent characteristics of the fluid itself, and not water absorption, which caused the fluid to be defective. Harvey testified that in his opinion a substantial amount of water could not be absorbed; and that the water in the fluid came from a breakdown under heat and pressure of the ethers which made up the chemical composition of the fluid. There also was evidence of prior difficulties with this vehicle, as well as with other 1965 Lincoln Continentals, which were symptomatic of defective brake fluid. Such evidence goes a considerable distance toward establishing that the fluid sold by Ford was defective.

We are satisfied that there was sufficient evidence in support of each of the essential elements of plaintiffs' case to warrant its submission to the jury. See Kridler v. Ford Motor Company, 422 F. 2d 1182, 1184 (3 Cir. 1970). We so hold.

### III.

■ Ford next contends that the trial judge should have stricken the testimony of plaintiffs' expert witness, Harvey, on the ground that no proper foundation had been laid for his testimony. We find no merit in this claim.

Ford's essential argument here is that there was insufficient evidence that the brake fluid tested by Harvey was the same fluid which was in the vehicle at the time of the accident.[5] As we have stated above, there was evidence that the fluid tested was that removed from the vehicle. Moreover, there was evidence that the fluid was removed and transported in a manner which would not allow substantial absorption of water. While there was some conflicting evidence as to the chain of possession of the jar and as to the cleanliness of the equipment used, that goes to the weight rather than the admissibility of the evidence. Scott v. Spanjer Bros., Inc., 298 F.2d 928, 931–32 (2 Cir. 1962); Kridler v. Ford Motor Company, *supra*, 422

---

4. Since the defective brake fluid apparently was sold to plaintiffs in Connecticut, Connecticut law governs in determining what must be shown by plaintiffs to recover against Ford, assuming the breach of warranty action is a contract action. Even if the action is regarded as sounding in tort, Connecticut law would apply since the accident occurred in Connecticut and involved Connecticut residents. Although it appears that the brake fluid was manufactured outside the state, we consider Connecticut's contacts to be more significant. See Pearson v. Northeast Airlines, Inc., 309 F.2d 553 (2 Cir. 1962) (en banc); McQuaide v. Bridgeport Brass

Company, 190 F.Supp. 252 (D.Conn. 1960); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963).

5. Ford argues, as a related claim, that allowing Harvey to testify subject to connection impaired Ford's ability to cross-examine him. Few aspects of the trial of a case are more clearly within the discretion of the judge than the order of proof. It is not uncommon to allow a party to offer evidence subject to connection. We find no abuse of discretion in that respect here. See McCormick on Evidence § 58 (1954).

F.2d at 1186–87; Obolensky v. Saldana Schmier, 409 F.2d 52, 55 (1 Cir. 1969). A trial judge necessarily has broad discretion in determining the adequacy of the foundation for expert testimony, and particularly the point in the trial when such foundation becomes adequate.

We are satisfied that the trial judge here did not abuse his discretion in denying Ford's motion to strike the testimony of plaintiffs' expert witness.

## IV.

■ Ford's final contention is that the trial judge's charge was so confusing and prejudicial as to require a new trial. We disagree.

The court did state at several points in its charge that the jury might find that the brake *mechanism* was defective. In discussing the claim of negligence, for example, the court said, "I do not say . . . that these brakes were defective, but that is the question essentially which you have to decide." And on the breach of warranty claim, the court instructed the jury that "you have to ask yourself whether this brake was defective because Ford Motor Company failed to exercise a reasonable degree of care to make sure that this product was reasonably fit for its intended use."

In response to the exception taken by Ford's counsel at the conclusion of the charge,[6] the court gave the following brief supplemental instruction:

"Counsel has called my attention to the fact that I said to you, '[I]f you find that the brake mechanism was

defective, you could find negligence or breach of warranty'. It is true that the only evidence in this case is that the mechanism itself was not defective. There was some testimony to the effect that the fluid was wrong fluid, that it boiled at too low a boiling point and formed a vapor lock which caused brake failure. That is my recollection. Of course it is your recollection that controls."

Since there was no evidence as to any defect in the braking system other than the defective brake fluid, Ford contends that the court's charge improperly permitted the jury to find such a defect. We do not agree.

The charge taken as a whole properly instructed the jury that plaintiffs' claim was that the *braking system,* of which the *brake fluid* was an integral part, was defective. Although at times the court referred generally to defective brakes and a defective brake mechanism, it was made clear that the only basis in the evidence for plaintiffs' claims of negligence and breach of warranty was the defective brake fluid. Furthermore, since the main charge came immediately after the summations of counsel, the jury surely knew, even before the court's charge, that plaintiffs' claims related only to the defective brake fluid. It was well within the trial judge's discretion in charging the jury not to superimpose a further summary of the essential claims of the parties.

We hold that the trial judge correctly charged the jury.

Affirmed.

6. Counsel for Ford failed to submit any requests to charge before his summation and before the court charged the jury. It was not until after the charge had been given that counsel for Ford submitted his requests to charge. This late submission failed to comply with Fed.R.Civ.P. 51, which requires that if requests to charge are to be submitted that must be done at the close of the evidence. The late submission here also ignored the specific order of the court that requests to charge be submitted before the opening of the trial.