## ACME PUMP COMPANY, INC. *v.* NATIONAL CASH REGISTER COMPANY

COURT OF COMMON PLEAS    HARTFORD COUNTY    FILE No. 103445

Memorandum filed September 23, 1974

*Spada & Vinkels* and *Gerald A. Roisman,* for the plaintiff.

*Pearl & Barbieri,* for the defendant.

NORTON M. LEVINE, J. This action was brought to recover damages arising out of the purchase of an NCR model No. 36 bookkeeping machine by the plaintiff from the defendant. The order was placed on or about July 29, 1968, following extensive prior negotiations between Nicholas Nigro, as president of the plaintiff, and Douglas Tracy, a salesman for the defendant. The combined purchase price for the machine and certain accessories was $6,846.53.

## I

Following delivery of the machine, on or about August 30, 1968, the defendant was required to instal and program it. The defendant was also required to train the plaintiff's employees in the use of the machine. The plaintiff complained frequently that the machine jammed; that it did not function properly; and that it was never able to perform the many aspects of bookkeeping work, for which it was purchased. Many visits of the defendant's personnel to the plaintiff's place of business, for the purposes of instructing the plaintiff's employees and attempting to correct the mechanical malfunctions, proved fruitless. The plaintiff alleged that at all times following August 30, 1968, the machine was never used for the actual performance of its bookkeeping duties.

The plaintiff made arrangements to finance the purchase of the machine through a lease agreement with Granite Equipment Leasing Corporation, hereinafter referred to as Granite. The plaintiff made nine payments on account of the lease, in the total sum of $1350.45, through January, 1969. Because of the difficulties with the machine, the plaintiff finally terminated its payments to Granite. Granite repossessed the machine on or about June 17, 1970. Granite commenced an action in this court for the deficiency resulting, following repossession and resale of the machine. Subsequent to a judgment in favor of Granite against the plaintiff in the sum of $7071.09 (see memorandum of decision in *Granite Equipment Leasing Corporation* v. *Acme Pump Co.*, A-554 Rec. & Briefs), the plaintiff prosecuted an appeal to the Supreme Court. On appeal, the judgment for Granite was affirmed. *Granite Equipment Leasing Corporation* v. *Acme Pump Co.*, 165 Conn. 364. The plaintiff alleged that as a result

thereof, it was compelled to pay the judgment rendered in favor of Granite against it in the sum of $8382.35, which included interest and costs over and above the amount of the original judgment.

The plaintiff's claims, summarized, are that the NCR machine was not in merchantable condition or of merchantable quality; that the defendant's representations to the plaintiff as to the capabilities of the machine to perform diverse bookkeeping functions were never fulfilled or capable of being fulfilled; and that the machine was never fit for the use for which it was intended.

## II

The plaintiff initially urges that the defendant breached its express warranties to the plaintiff. General Statutes § 42a-2-313 (1) (a) is cited. That argument has merit.

In the course of the negotiations prior to sale, Tracy made numerous statements to Nigro, representing that the machine, as finally programmed, would handle a wide variety of bookkeeping functions, including accounts receivable, accounts payable, payroll, general ledger posting, and other related matters. In the defendant's equipment order form, dated July 29, 1968, prepared by the defendant, a provision warranted the machine "for a period of 12 months after delivery against defects in material, workmanship and operational failure from ordinary use." The statements and representations of Tracy must be read together with the written warranty against the specified defects, appearing in the order form. They constitute a sufficient basis for a conclusion that the defendant breached its express warranties in this case. *Beech Aircraft Corporation* v. *Flexible Tubing Corporation,* 270 F. Sup. 548, 560.

It is true that the defendant's order form contains a clause that "[t]his contract contains all of the agreements and representations of the parties." That clause, in and of itself, does not prevent consideration of Tracy's statements and representations, over and above the general warranty against "operational failure," appearing in the order form. General Statutes § 42a-2-317; *Torrance* v. *Durisol, Inc.,* 20 Conn. Sup. 62, 64.

The defendant made a vigorous effort to prove that the failure of performance stemmed not so much from the mechanical defects of the machine and its program bars, as from the inexperience of the plaintiff's bookkeepers and their resistance to a machine which might curtail or eliminate their jobs. The plaintiff emphatically denied that assertion and maintained that its employees attempted, diligently and in good faith, to master the operations but had no success due to jamming and other breakdowns of the machine beyond their control.

The testimony on that issue was in conflict. The court concludes that the more credible evidence supports the contentions of the plaintiff. The court is persuaded that Nigro and his employees made a bona fide effort to use the machine in their work but that they were prevented from doing so, by defects in the machine and its program bars, coupled with inadequate instruction by the defendant's field personnel. The decision on liability for the breakdown and defects must be against the defendant.

### III

It is also apparent that the defendant breached its implied warranty of fitness for a particular purpose, under General Statutes § 42a-2-315.[1] The

[1] "Sec. 42a-2-315. IMPLIED WARRANTY: FITNESS FOR PARTICULAR PURPOSE. Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and

evidence disclosed that the plaintiff had not previously owned or used a sophisticated bookkeeping machine, such as the NCR No. 36. The plaintiff was compelled to rely on the experience and expertise of the defendant, and its representations and assistance, in installing and making the machine fully operational. The defendant was fully aware of the plaintiff's status as a novice. It is also crystal clear that the plaintiff would not have purchased the machine except for the defendant's many assurances and statements that it would efficiently perform the bookkeeping duties for the plaintiff. Under the circumstances, it cannot be denied that liability for an implied warranty of fitness for a particular purpose did, in fact, arise in this case. *Catania* v. *Brown,* 4 Conn. Cir. Ct. 344, 347. The warranty of fitness for a particular purpose and the warranty of merchantability may coexist or merge under certain circumstances. *Beech Aircraft Corporation* v. *Flexible Tubing Corporation,* supra, 562; *Crotty* v. *Shartenberg's-New Haven, Inc.,* 147 Conn. 460, 464.

## IV

The court also agrees that the defendant breached its implied warranty of merchantability, under General Statutes § 42a-2-314. *Crotty* v. *Shartenberg's-New Haven, Inc.,* supra, 463; *Koellmer* v. *Chrysler Motors Corporation,* 6 Conn. Cir. Ct. 478, 482. No extended discussion of that issue is necessary because of the prior findings as to the defendant's breaches of warranties in sections II and III above.

## V

A brief comment is in order pertaining to the defendant's attempted disclaimer of liability, as con-

that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 42a-2-316 an implied warranty that the goods shall be fit for such purpose."

tained in its order form, previously referred to. In the form, just above a caption reading "Notice to Retail Buyers," the following words appear: "The foregoing warranties are exclusive of all other warranties, whether written, oral or implied."

General Statutes § 42a-2-316 (2) provides, in part, that "[s]ubject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be *conspicuous,* and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and *conspicuous."* (Italics supplied.) The attempted disclaimer by the defendant was not, in type or otherwise, sufficient to alert the average buyer to its existence or its terms. It is concluded that the clause, as printed, is so inconspicuous as to nullify its effect as an attempted disclaimer of liability for an implied warranty of merchantability or an implied warranty of fitness. *Koellmer* v. *Chrysler Motors Corporation,* supra, 484. The defendant makes only a fleeting reference in its brief to the disclaimer clause in its order form, and it seems clear that the defendant does not seriously rely on it.

## VI

This court comes now to the question of damages. The pertinent sections of the General Statutes are quoted in a footnote.[2] One of the plaintiff's claims

[2] "Sec. 42a-2-714. BUYER'S DAMAGES FOR BREACH IN REGARD TO ACCEPTED GOODS. (1) Where the buyer has accepted goods and given notification as provided in subsection (3) of section 42a-2-607 he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable. (2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. (3) In a proper case any incidental and

is that the proper measure of damages should be the deficiency judgment obtained by Granite against the plaintiff and described in section I above.

The difference between the value of the goods delivered and that which they would have had if they had complied with the warranty is not the exclusive measure of damages in breach of warranty cases. The rule is more generous where special circumstances are present. In essence, the loss directly and naturally resulting is the measure of damages. *K. B. Noble Co.* v. *Popielarczyk,* 125 Conn. 699, 703; *Burkhardt* v. *Armour & Co.,* 115 Conn. 249, 263. The damages awarded should essentially place the plaintiff in the same position as it would have been in if the defendant had fully performed its agreement. *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 272.

The plaintiff therefore urges that its payment of the deficiency judgment in the Granite lawsuit directly and naturally resulted, in the ordinary course of events, from the defendant's breach of warranty. That contention, for the most part, has merit. 5 Corbin, Contracts § 1037 states that "[i]f the plaintiff can show that the defendant's breach of contract has caused litigation involving the plaintiff in the payment of counsel fees, court costs, and the amount of a judgment, and shows further that such expenditure is reasonable in amount and could not have been avoided by him by reasonable and pru-

---

consequential damages under the next section may also be recovered."

"Sec. 42a-2-715. BUYER'S INCIDENTAL AND CONSEQUENTIAL DAMAGES. (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection . . . and any other reasonable expense incident to the delay or other breach. (2) Consequential damages resulting from the seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise . . . ."

dent effort, he can recover damages against the defendant measured by the amount of these expenditures."

In this case, the defendant's breach of warranty was the proximate cause of the Granite lawsuit. The judgment obtained by Granite, at least to the extent of $7071.09, was in a reasonable amount. It could not have been avoided by any reasonable or prudent effort on the part of the plaintiff. Obviously, it would have been completely unfair to compel the plaintiff to continue payments on a machine which was wholly defective. The plaintiff's resulting default led to the repossession by Granite. The proceeds from the resale, in the sum of $1046.30, helped, in fact, to reduce the amount of the deficiency judgment.

"If a breach of contract is the cause of litigation between the plaintiff and third parties that the defendant had reason to foresee when the contract was made, the plaintiff's reasonable expenditures in such litigation are included in estimating his damages." Restatement, 1 Contracts § 334. Since the defendant helped to arrange the lease between the plaintiff and Granite, the defendant had reason to anticipate that if the machine were defective, the plaintiff might breach its lease with Granite and that Granite thereafter might sue the plaintiff.

The plaintiff's brief urges recovery in this case, over and above the original Granite judgment of $7071.09, of an additional sum of $1311.26, consisting of four items. They involve a bill of costs, arising out of the trial of the lower court action in the Granite case, interest thereon, interest on the original Granite judgment through November 26, 1973, and certain costs allegedly assessed against the plaintiff in the Supreme Court arising out of the Granite case. No evidence as to the details of

these items was offered at the time of trial of the instant case. The claim for these four items is denied.

The plaintiff further contends that it should be allowed, as an item of recovery herein, reasonable attorneys' fees incurred by it in defense of the Granite action. The plaintiff initially concedes that in Connecticut, attorneys' fees are not recoverable by it, as the successful litigant, in the absence of a contractual or statutory provision specifically providing for them. The plaintiff maintains, however, that the rule should be different where the counsel fees were incurred by it in a prior, collateral and related action such as the Granite case.

None of the plaintiff's authorities from other jurisdictions persuade the court that the general Connecticut rule barring recovery of the plaintiff's counsel fees herein should be amended, so as to permit reimbursement of its counsel fees in the Granite case. In that connection the complaint here did not contain such an allegation of damages. Further, the plaintiff offered no evidence before this court as to the fair and reasonable amount of those fees. *Braithwaite* v. *Lee,* 125 Conn. 10, 14.

The plaintiff asserts that, over and above the Granite deficiency judgment, it should also recover $1350.45 constituting the lease payments made by it to Granite prior to its default. Reference to the file of the Granite case discloses that the trial court, in computing Granite's damages, gave the plaintiff credit or an offset for the $1350.45 in lease payments. *Guerriero* v. *Galasso,* 144 Conn. 600, 605. If the $1350.45 were to be awarded as an additional component of damages here, the plaintiff would be given a double credit for the same payment. That claim must be rejected.

The plaintiff also demanded prejudgment interest at 6 percent on the damages resulting from the

breach by the defendant, commencing from the "date of the breach." The allowance of such interest is within the discretion of the court. *Wells Laundry & Linen Supply Co.* v. *Acme Fast Freight, Inc.,* 138 Conn. 458, 463. If the measure of damages were the original purchase price of $6846.53, then the argument for prejudgment interest might be more cogent. Relief measured basically by the Granite deficiency judgment is, however, the fair and more appropriate method of recovery here. Therefore, the claim for prejudgment interest is not tenable.

The plaintiff made an additional damage claim arising out of a second lease by Granite of four NCR program panels for use on the bookkeeping machine. The lease acceptance was dated June 19, 1969, and provided for twelve monthly payments of $46.32 each, commencing June 25, 1969. The plaintiff alleged that it made three monthly payments on account, totaling $138.96, and then terminated such payments because the bookkeeping machine had been useless. The plaintiff therefore contends that it is entitled to a refund of $138.96. The court finds that such a refund should be allowed.

The recovery in this case is thus the original amount of the Granite deficiency judgment, $7071.09, plus the payment of $138.96 on the lease described above, making a total of $7210.05.

## VII

The issues are found for the plaintiff. Judgment may enter for the plaintiff to recover of the defendant the sum of $7210.05, plus taxable costs.