[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action which claims breach of express warranty, breach of implied warranty and violation of the Connecticut Unfair Trade Practice Act (CUTPA) in a transaction involving the sale of a used vehicle between private parties. The defendant has pled in special defense award and satisfaction and a counterclaim.
The facts are as follows. Toward the end of August, 1994, the plaintiff, Jeff Dondero contracted the defendant, Richard Kasheta, about a pick up truck the plaintiff had heard the defendant had up for sale. A time was set for the plaintiff to come to defendant's house to see the truck. The plaintiff arrived with his mother, his girlfriend and a friend, Jeremy Verelli. The CT Page 1519 truck was driven up and down the driveway by the plaintiff. Verelli opened the hood and examined the interior. The transfer case was engaged to see that it was not frozen. During the course of their inspection the defendant told the plaintiff that there was a problem with the catalytic converter and that if the plaintiff wanted to take care of it himself, he would knock $400 off his asking price of $9,200. The defendant also stated during the course of the inspection that he had had 55 hours of servicing, that everything was done by a dealer, and that the truck was in good condition.
Jeremy Verelli, a good friend of the plaintiff, who knew about trucks, worked with trucks, grew up with trucks, looked the truck over, put it in gear, drove it back and forth in the driveway, concluded it seemed to be a decent truck and did not see any problems with it.
The plaintiff told the defendant he was interested in purchasing the truck, that he would go home and discuss it and get back to him. Plaintiff and those with him thought it was a nice truck and placed much weight on the representation that the car had had 55 hours of work and that it was all dealer provided.
Within a few days the plaintiff called the defendant and told him he would buy the truck. When the plaintiff appeared on September 6, 1994, to pick up the truck the defendant told him the car was not ready, that he had determined it needed a brake job and was having it done at this time. The defendant told the plaintiff that the brake job was costing over $900 and asked if the plaintiff would pay an additional $200 toward that cost. The plaintiff agreed. A bill of sale was made out dated September 6, 1994, in which the defendant acknowledged receipt of $8,800 for the purchase of the truck and that a balance of $200 would be due in 30 days with delivery of the truck to take place on September 7, 1994. The truck was ready that following evening but the snowplow which was part of the original deal was to be kept by the defendant as security for payment of the $200.
The plaintiff registered the car and paid the sales tax on it to the Motor Vehicle Department. Within two days of taking possession of the truck, on September 10th, while driving it around, the plaintiff experienced a problem with the transmission; the transfer had gone. The truck was dead on the road. On September 15th the plaintiff had a new transfer case put in by JB Automatic Transmission Inc. (JB) at a cost of CT Page 1520 $1,803.36. Between the time the truck broke down and the plaintiff had it repaired, the plaintiff did not notify the defendant that he was having problems with the truck. Between the date of the brake job, September 7th, 1994, and the date the transfer case went, September 10, 1994, 266 miles had been put on the car.
Upon picking up the truck from JB the plaintiff, his girlfriend and a friend went directly from JB to Vermont. Twice on the way the plaintiff experienced trouble with the truck. In each instance the truck was taken to a garage, worked on and sent on its way. Three days later, September 18, 1994, on the return trip from Vermont the truck caught fire and was totally destroyed. The local fire marshall called to the scene could not determine the cause of the fire.
Upon returning to Connecticut the plaintiff telephoned the defendant and told him what had happened to the car. It was agreed the plaintiff could pick up the snowplow and that the defendant would forget about the $200 balance still owed on the truck.
The plaintiff drove over to the defendant's house with a friend and picked up the snowplow. Within two weeks the defendant received a letter from the plaintiff's attorney asking him for copies of the receipts showing the work done on the truck prior to the sale. The instant action followed.
The plaintiff's breach of express warranty claim is premised on the defendant's claimed assertions that the truck was in good and running condition without any substantial mechanical defect, that the vehicle had had fifty-five hours of maintenance and/or labor performed on the vehicle prior to the sale.
A. Express Warranty, C.G.S. § 42a-2-313
". . . (a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes a part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise . . ." C.G.S. § 42a-2-313.
Under the provisions of this statute "the uniform commercial code recognizes that some statements of sellers are merely `puffing' and do not create express warranties . . . drawing the CT Page 1521 line between puffing and the creation of a warranty is often difficult but several factors have been identified as helpful in making that determination . . . One such factor is the specificity of statements made . . . Statements to the effect that a truck was in `good condition' and that a motor was in `in perfect running order' have not been held to create express warranties . . ." WebPress Service Corp. v. New London Motors, 203 Conn. 342 (1987), 525, 351, 352 A.2d 57.
In the instant case the defendant made two specific representations. The first having to do with the servicing to the car over time and the second having to do with the catalytic converter. The defendant produced copies of dealer receipts establishing that in excess of fifty hours of maintenance and labor had been performed on the car. The problem with the catalytic converter was handled with a $400 reduction in the asking price and the plaintiff was put on notice by the defendant that the problem could be hazardous if not taken care of. It is not known whether there was any work done on the exhaust system which involved the catalytic converter by any of the two garages that did repair work on the car while being driven to Vermont. Nor could the fire marshall because of the extent of the damage determine what caused the fire.
It cannot be said that the plaintiff relied on the defendant's statement that the car was in good working condition. The defendant had a friend with him who knew about trucks. The friend drove the car up and down the driveway. He examined under the hood. He engaged the transfer case. He declared it to be a decent truck and could not see any problems with it. The fact of the amount of servicing the truck had received was also factored in.
Under the facts found this court does not find that there has been an express warranty which has been breached.
B. Implied Warranty C.G.S. § 42a-2-315
"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 42a-2-316, an implied warranty that the goods shall be fit for such purpose." C.G.S. § 42a-2-315. CT Page 1522
Plaintiff claims he made known to the defendant that he intended to use the truck for business and that such an assertion gave rise to an implied warranty of fitness for such purpose.
Under a claim of implied warranty of fitness for a particular use or purpose the buyer makes known to the seller a particular purpose for which goods are required and the buyer relies upon the seller's skill and judgment that the goods shall be reasonably fit for such purpose. See Torrance v. Durisol,20 Conn. Sup. 62, 65 (1956), 122 A.2d 589.
The plaintiff knew the defendant was not a mechanic nor did the defendant hold himself out as having any particular skill in that area. In fact the plaintiff was told that maintenance and repairs of the truck had all been done by the dealer where he bought the truck. Nor does the evidence show that the plaintiff went into any detail about the business use of the truck. The fact that a snowplow was included with the truck could suggest plowing activity but it cannot be said on the facts found that the plaintiff went into detail about how he was going to use the truck.
The court concludes from the facts found that the plaintiff has failed to prove by a preponderance of the evidence that an implied warranty pursuant to C.G.S. § 42a-2-315 was created and breached.
C. Connecticut Unfair Trade Practice Act, C.G.S. § 42-110a et seq.
"No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S. § 42-110b.
"It is well settled that in determining whether a practice violates CUTPA [the Supreme Court] has adopted the criteria set out in the `cigarette rule' by the Federal Trade Commission for determining when a practice is unfair: (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness, (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other CT Page 1523 businessmen]." (Citation omitted.) Fink v. Golenbock,238 Conn. 183, 215, ___ A.2d ___ (1996). "[A] violation of CUTPA may be established by showing either an actual deceptive practice or a practice amounting to a violation of public policy." (Citations omitted.) Jacobs v. Healey Ford-Subaru, Inc., 231 Conn. 707, 726,652 A.2d 496 (1995).
Having concluded from the facts found that there were no representations which would support a claim for breach of an express warranty and none which created an implied warranty which was breached, the plaintiff's CUTPA claim which is premised on the defendant having made warranties and representations which were false, known to be false and made to induce the purchase of the truck, is not proven.
For the reasons stated the court finds that the plaintiff has failed to prove by a preponderance of the evidence the allegations of counts one, two and three of the complaint and accordingly enters judgment for the defendant as to each of those counts.
Counterclaim
Having found for the defendant on each of the three counts of the complaint the court need not address the defendant's special defense of accord and satisfaction except as it is referenced in his counterclaim.
In his counterclaim the defendant asserts that to the extent the plaintiff denies accord and satisfaction, the defendant claims that the plaintiff failed to pay the defendant the $200 payment within thirty days of the sale of the truck and that the amount was still owing.
We do not agree with the defendant's position that unless an accord and satisfaction is found the plaintiff continues to owe the $200 he had agreed to pay toward the brake job. The facts in this case as found by the court are that the plaintiff called the defendant and told him about the fire, that upon hearing the truck was a total loss the plaintiff offered to forgive the $200 still owed and told the defendant he could come by and pick up the snowplow. In that phone conversation the plaintiff made no demand upon the defendant to pay any part of the loss which had not been covered by insurance. Nor when the plaintiff arrived in his friend's car to pick up the snowplow was there any discussion CT Page 1524 about the loss. The snowplow had been included in the $8,800 price which the plaintiff had already paid and the defendant had indicated on the phone he wasn't going to hold him to the $200 balance. The plaintiff had no reason to believe there was any qualification attached to his picking up the snowplow and going on his way
The court finds for the plaintiff in the counterclaim.
Mary R. Hennessey, Judge