JACQUELINE CROTTY *v.* SHARTENBERG'S–NEW HAVEN, INC.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued March 3—decided June 28, 1960

*Vincent Villano,* for the appellant (plaintiff).

*Kevin T. Gormley,* with whom, on the brief, was *Martin E. Gormley,* for the appellee (defendant).

SHEA, J. The plaintiff brought this action to recover damages for personal injuries alleged to have been sustained in consequence of a breach of an implied warranty. The court directed a verdict for the defendant and thereafter denied the plaintiff's motion to set it aside. The plaintiff has appealed.

From the evidence, viewed in the light most favorable to the plaintiff, the jury could have found the following facts: The plaintiff asked the sales girl at the cosmetic counter in the defendant's store for a good hair remover, without specifying any brand. The clerk sold her a hair remover called Nudit, a preparation contained in a tube which was packed,

together with a tube of finishing cream, in a cardboard box. Under the directions on the box and on the tube of Nudit, the user whose skin was supersensitive was, on the first occasion, to make a test in accordance with instructions in a booklet enclosed in the box. The plaintiff read these instructions and made the test as directed. When no reaction was observed, she applied the hair remover to her upper lip. A few hours later she suffered an allergic reaction. Her condition was diagnosed as contagious impetigo secondary to an allergic dermatitis. She gave notice to the defendant of a claimed breach of warranty within a few days after she sustained her injuries. In the opinion of her physician, they were caused by the application of Nudit. Previously, the plaintiff had used other hair removers without harmful effect. Nudit and these other hair removers contain a chemical known as calcium thioglycolate. Some persons are allergic to this substance. It is not an intrinsically unhealthy ingredient. The plaintiff is one of a group of persons who develop sensitivity from its use. Skin tests are given as an aid to diagnosis, but sometimes such a test does not demonstrate sensitivity even though it is known to be present.

Section 42-14 of the General Statutes (see General Statutes §§ 42a-2-314, 42a-2-315, effective Oct. 1, 1961) provides for implied warranties of quality in contracts to sell and sales.[1] In the implied warranty,

---

[1] "Sec. 42-14. IMPLIED WARRANTIES OF QUALITY. . . . (1) When the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he is the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose . . . ; (2) when the goods are bought by description from a seller who deals in goods of that description, whether he is the grower or manufacturer

under subsection (1), of fitness for a particular purpose, there are two essential elements: (a) knowledge by the seller of the buyer's special purpose and (b) a reliance by the buyer on the seller's skill and judgment. Subsection (2) relates only to goods bought by description from a seller who deals in goods of that description. The warranty requires that the goods be of merchantable quality. This means that they shall be reasonably suitable for the ordinary uses intended. *Simmons* v. *Rhodes & Jamieson, Ltd.,* 46 Cal. 2d 190, 194, 293 P.2d 26; *Mead* v. *Coca Cola Bottling Co.,* 329 Mass. 440, 442, 108 N.E.2d 757. Under subsection (3), there is, in a purchase of goods which the buyer inspects or has an opportunity to inspect, no implied warranty as regards defects which the examination ought to disclose. See 1 Williston, Sales (Rev. Ed.) § 234. Under subsection (4), if the buyer himself selects an article under its patent or other trade name, there is no implied warranty that the article is fit for his special purpose; he may, nevertheless, rely on the seller to furnish goods which are reasonably fit for the general purpose for which they are sold, that is, are of merchantable quality. 46 Am. Jur. 527, § 344. However, an implied warranty of fitness for the buyer's particular purpose is not excluded under this subsection if the buyer, when he discloses his particular purpose to the seller, relies on the seller's skill and judgment to furnish appropriate goods and the seller is the one who

or not, there is an implied warranty that the goods shall be of merchantable quality . . . ; (3) if the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed; (4) in the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose . . . ."

selects goods which have a patent or trade name.
1 Williston, Sales (Rev. Ed.) p. 616. The partic-
ular purpose for which the goods are required, made
known to the seller, may also be the general pur-
pose for which the product was prepared and is
commonly used. If so, there is an implied warranty
that the goods are of merchantable quality. 4 Willis-
ton, Contracts (Rev. Ed.) p. 2722; 1 Williston, Sales
(Rev. Ed.) § 235. The warranties under subsections
(1) and (2) may coexist, and where this is shown,
recovery may be based on either one. *Ryan* v. *Pro-
gressive Grocery Stores, Inc.,* 255 N.Y. 388, 392,
175 N.E. 105. A dealer who sells articles which
ordinarily are used in only one way impliedly war-
rants fitness for use in that particular way. The
warranty is one of merchantability. *Keenan* v.
*Cherry & Webb,* 47 R.I. 125, 129, 131 A. 309; *Bran-
denberg* v. *Samuel Stores, Inc.,* 211 Iowa 1321, 1325,
235 N.W. 741.

Thus, under our statute, there may be an implied
warranty (1) that the goods shall be reasonably fit
for a particular purpose, or (2) that the goods shall
be of merchantable quality. The existence, nature
and extent of either implied warranty depends upon
the circumstances of the case. In the case at bar,
the plaintiff asked the sales girl at the cosmetic
counter for a good hair remover, and the girl sold
her Nudit. Upon the evidence developed under the
allegations of the complaint, the jury could have
found that the product was sold under either im-
plied warranty. Some jurisdictions hold that if the
article sold can be used by a normal person without
injury, there is no breach of the implied warranty of
reasonable fitness. *Flynn* v. *Bedell Co.,* 242 Mass.
450, 453, 136 N.E. 252; *Worley* v. *Proctor & Gamble
Mfg. Co.,* 241 Mo. App. 1114, 1122, 253 S.W.2d 532;

*Barrett* v. *S. S. Kresge Co.,* 144 Pa. Super. 516, 522, 19 A.2d 502; *Stanton* v. *Sears Roebuck & Co.,* 312 Ill. App. 496, 500, 38 N.E.2d 801; *Zager* v. *F. W. Woolworth Co.,* 30 Cal. App. 2d 324, 332, 86 P.2d 389; *Merrill* v. *Beaute Vues Corporation,* 235 F.2d 893, 898; *Graham* v. *Jordan Marsh Co.,* 319 Mass. 690, 693, 67 N.E.2d 404. In some of these cases, the injured party was described as one who suffered from a peculiar or unique susceptibility to harm from the article or product sold; in others, he was found to have a peculiar sensitivity or unusual bodily condition unknown to the seller. In none of them was he one of an appreciable class of like persons. In other cases, the courts have held that protection to the buyer cannot be logically restricted, under a breach of warranty, to a predetermined, arbitrary class such as the normal buyer. *Bianchi* v. *Denholm & McKay Co.,* 302 Mass. 469, 472, 19 N.E.2d 697; *Zirpola* v. *Adam Hat Stores, Inc.,* 122 N.J.L. 21, 22, 4 A.2d 73; *Reynolds* v. *Sun Ray Drug Co.,* 135 N.J.L. 475, 476, 52 A.2d 666. These courts adopt the theory that the seller is not absolved from liability under the implied warranty created by the statute by the mere fact that only a small proportion of those who use the product suffer injuries because of its use. In each of these cases, the plaintiff was found to be one of a class of persons whose bodily conditions made him susceptible to injury upon exposure to a substance which would cause harm only to persons in that class.

Allergy or peculiar susceptibility has, in breach of warranty actions, been the subject of extensive study by various legal writers. See Barasch, "Allergies and the Law," 10 Brooklyn L. Rev. 363; comment, "Allergy and the Implied Warranty of Fitness

for a Particular Purpose," 25 Fordham L. Rev. 306; Horowitz, "Allergy of the Plaintiff as a Defense in Actions Based upon Breach of Implied Warranty of Quality," 24 So. Cal. L. Rev. 221. Authorities agree that a buyer who, having a unique or peculiar sensitivity, suffers injury from some innocent substance should not be entitled to recover damages from the seller. There is a divergence of opinion, however, as to the rights of persons whose susceptibility is not peculiar to them alone. The medical profession has made an extensive study of allergies. It has found that the human body may become sensitized to a substance so that, upon exposure to it, there is a bodily reaction which results in one or another of the allergic disturbances. It is common knowledge that eggs, strawberries, fish, and other products in common use, as well as the pollen of certain flowering plants or shrubs, will produce allergic reactions in some people. The sale of an article or product in its natural state may cause an allergic reaction, but the seller should not be held liable under the law of implied warranty unless there is some inherent defect in the product sold. A warranty of reasonable fitness must be construed in the light of common knowledge with reference to the nature of the article or product sold. *Silverman* v. *Swift & Co.*, 141 Conn. 450, 457, 107 A.2d 277. A warranty of this kind does not mean that the goods can be used with absolute safety or that they are perfectly adapted to the intended use, but only that they shall be reasonably fit therefor. *Cavanagh* v. *F. W. Woolworth Co.*, 308 Mass. 423, 426, 32 N.E.2d 256.

When a chemical or other substance is used in the manufacture of a product for human use, a different situation is presented. Here the chemical or the ingredient which the manufacturer puts into the

product may be harmful to humans. The term "reasonable fitness" under the law, must, of necessity, be considered one of degree. 1 Williston, Sales (Rev. Ed.) § 243, p. 643. The term must be related to the subject of the sale. The determination of the question whether goods are reasonably fitted for the purpose for which they are required cannot be fixed arbitrarily in advance by limiting the application of the term "reasonable fitness" to a predetermined class or group of buyers designated as normal persons. To establish a breach of the warranty, the plaintiff must show (1) that the product contains a substance or ingredient which has a tendency to affect injuriously an appreciable number of people, though fewer in number than the number of normal buyers, and (2) that he has, in fact, been injured or harmed by the use of the product. *Bianchi* v. *Denholm & McKay Co.,* supra; *Zirpola* v. *Adam Hat Stores, Inc.,* supra, 23; comment, 25 Fordham L. Rev. 306, 315. The burden is on the plaintiff to establish these facts. Proof of the harmful propensities of the substance and that it can affect injuriously an appreciable number of persons is essential to his case. See *Landers* v. *Safeway Stores, Inc.,* 172 Ore. 116, 137, 139 P.2d 788; *Worley* v. *Proctor & Gamble Mfg. Co.,* 241 Mo. App. 1114, 1122, 253 S.W.2d 532. If a buyer has knowledge, either actual or constructive, that he is allergic to a particular substance and purchases a product which he knows or reasonably should know contains that substance, he cannot recover damages for breach of an implied warranty. Nor can he recover if he suffers harm by reason of his own improper use of the article warranted. *Silverman* v. *Swift & Co.,* supra; *Fredendall* v. *Abraham & Straus, Inc.,* 279 N.Y. 146, 148, 18 N.E.2d 11.

In the present case, the court, in directing the verdict, adopted the rule that if an article sold under an implied warranty can be used by a normal person without injury, there is no breach of the implied warranty of reasonable fitness. When a manufacturer puts into a product to be sold for human use a substance which has deleterious qualities and a tendency to harm an appreciable number of its users, the manufacturer, and not the user, should shoulder the risk of injurious consequences. The same risk should be borne by the retailer who sells the article to a prospective user who, relying on the retailer, is entitled to believe that the article is reasonably fit for the purpose for which it is sold. When the plaintiff bought Nudit, she had no opportunity to examine or inspect it. Directions for its use made it known to the purchaser that it could injuriously affect one who might be allergic to some substance or ingredient contained in it. A skin test to determine possible reaction was recommended. The test suggested is not always efficacious. The plaintiff made the test but suffered no reaction from it. She later applied Nudit to her upper lip. The injuries appeared soon after in the exact area where it had been applied. There were facts from which the jury could have found that Nudit contained an ingredient which had a tendency to produce an injurious reaction in persons allergic to it, that the plaintiff was one of an appreciable number of persons who could be injuriously affected by its use, and that her injuries were caused by a breach of implied warranty.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.