LEAH E. CORNELIUSON (BRUNETTE) *v.* ARTHUR DRUG STORES, INC., ET AL.

KING, C. J., ALCORN, SHANNON, HOUSE and COTTER, Js.

 

Argued October 13—decided November 9, 1965

*Snow G. Munford,* for the appellants (defendants).

*Robert Y. Pelgrift,* for the appellee (plaintiff).

HOUSE, J.  This action was tried on the count for breach of implied warranty, and it is agreed by the parties that the applicable law is that stated in *Crotty* v. *Shartenberg's-New Haven, Inc.,* 147 Conn. 460, 467, 162 A.2d 513.

The case arose from the plaintiff's use of a hair waving lotion known as Ogilvie Sisters Home Permanent.  On January 2, 1958, the plaintiff purchased the lotion from the defendants, and her suit is predicated upon the claim that, as a result of her use of the lotion on January 4, she sustained a severe dermatitis with concomitant physical and

neurotic injuries. The jury returned a plaintiff's verdict, which the trial court refused to set aside. The defendants have appealed, assigning as error three rulings on the admissibility of evidence and the denial of their motion to set aside the verdict. In the motion they maintained that the verdict is not supported by the evidence and the law on the issue of liability.

In *Crotty* v. *Shartenberg's-New Haven, Inc.,* supra, we had occasion to consider the development of the law in the field of products liability and analyze the provisions of the Connecticut statute on implied warranties. Cum. Sup. 1955, § 2858d; Rev. 1958, § 42-14 (see General Statutes §§ 42a-2-314, 42a-2-315).[1]

In that case, we held (p. 464) that under our statute there may be an implied warranty that the goods sold shall be reasonably fit for a particular purpose, or that the goods shall be of merchantable quality and that the existence, nature and extent of either implied warranty depends on the circumstances of the case. We noted that some jurisdictions hold that if the article sold can be used by a normal person without injury, there is no breach of the implied warranty of reasonable fitness, while others adopt the theory that the seller is not absolved from liability under the implied warranty created by the statute by the mere fact that only a small proportion of those who use the product suffer injuries from its use. We concluded (p. 467) that the term "reasonable fitness" must, of necessity, be considered one of degree and that the term

---

[1] Section 42-14 is printed in a footnote to the opinion in *Crotty* v. *Shartenberg's-New Haven, Inc.,* 147 Conn. 460, 462, 162 A.2d 513, and the case itself is exhaustively analyzed in a case note on page 95 of volume 35 of the Connecticut Bar Journal.

must be "related to the subject of the sale." Rejecting the rule limiting the application of the term "reasonable fitness" to a class or group designated as normal persons, we adopted the test of injurious effect to "an appreciable number of people." We held that not only the causal connection between the product and the injury must be established but also the plaintiff must be a member of a class who would be similarly affected by the product, identifying that class as an appreciable number of people.

In the course of the opinion (pp. 467, 468) we used the following language: "To establish a breach of the warranty, the plaintiff must show (1) that the product contains a substance or ingredient which has a tendency to affect injuriously an appreciable number of people, though fewer in number than the number of normal buyers, and (2) that he has, in fact, been injured or harmed by the use of the product. . . . The burden is on the plaintiff to establish these facts. Proof of the harmful propensities of the substance and that it can affect injuriously an appreciable number of persons is essential to his case. . . . If a buyer has knowledge, either actual or constructive, that he is allergic to a particular substance and purchases a product which he knows or reasonably should know contains that substance, he cannot recover damages for breach of an implied warranty. Nor can he recover if he suffers harm by reason of his own improper use of the article warranted. . . . When a manufacturer puts into a product to be sold for human use a substance which has deleterious qualities and a tendency to harm an appreciable number of its users, the manufacturer, and not the user, should shoulder the risk of injurious consequences. The same risk should be borne by the retailer who sells the article

to a prospective user who, relying on the retailer, is entitled to believe that the article is reasonably fit for the purpose for which it is sold."

It is the contention of the defendants that the words "substance" and "ingredient" as used in defining the rule must be considered in context with the words "product," "article" and "goods," so that the test of injurious tendency is applied to the end product, including, of course, any incorporated substance or ingredient in the strength or quantity used in the product. It seems to be the contention of the plaintiff that, if we consider only the above-quoted portion of the opinion and take those words literally, the test of injurious tendency is to be applied not to the product itself or even to any particular substance or ingredient in the strength or quantity used in the product, but to any substance or ingredient in the product regardless of the strength or quantity used therein.

Using the latter interpretation, the plaintiff claims to have satisfied the burden of proof specified in the *Crotty* case. To examine the evidence in support of the plaintiff's claims is to demonstrate the unreasonableness of her contention. Viewed in the light most favorable to the plaintiff, there was evidence before the jury that all permanent waving lotions, including Ogilvie Sisters, now contain as a principal ingredient ammonium thioglycolate, a chemical compound which varies in degree of alkalinity according to the relative strength of the ammonia. An alkali is an irritant to the skin, depending on the degree of alkalinity. Normally, these permanent waving preparations have a degree of alkalinity which may produce a mild redness of the skin, but, if the lotion should be intensely alkaline, it can do more severe damage to the skin. A

chemist who was familiar with all the brands of home permanent waving lotions in the United States market and many in the European market was asked if he had "ever heard of anyone ever being harmed by one of these home permanent solutions" and he answered: "Yes, I have." Dr. Albert Rubin, who treated the plaintiff, testified that in his opinion the plaintiff's contact dermatitis was caused by her using the Ogilvie Sisters lotion and that in the course of his practice he had treated about a dozen patients who reacted in a similar fashion "to the use of home permanents." We must test the evidence in the light most favorable to the plaintiff and, accordingly, for that purpose disregard the weight of all the evidence produced by the defendants as to the safety and low alkalinity of the Ogilvie Sisters product. The considerable evidence produced by the defendants with respect to the safety and low alkalinity of the particular product does, however, highlight the glaring lack of any evidence whatsoever that the Ogilvie Sisters lotion, as chemically compounded, had a tendency to cause harm to an appreciable number of people. Dr. Rubin did not know the strength of the alkalinity of the Ogilvie Sisters lotion and could not recall ever having treated anyone else who had used it, other than the plaintiff.

In short, although there was evidence from which the jury could find that the Ogilvie Sisters lotion did cause injury to the plaintiff, there was no evidence from which they could find that this lotion as compounded had a tendency to affect injuriously an appreciable number of people. Proof of both injury to the plaintiff and such injurious tendency are necessary for the plaintiff to prevail. Proof that all permanent waving lotions generally con-

tain certain basic chemicals compounded in varying strengths in the different brands and that in the strength used in some of them the chemicals may injuriously affect some people is not alone a reasonable basis for a conclusion that any specific lotion, even though it contains in some form those same basic chemicals, has the injurious tendency requisite to establish liability and that that lotion is not "reasonably fit" or of "merchantable quality" as those terms are used in the statute (Rev. 1958, § 42-14) on implied warranties. The basic test must be applied to the particular product as compounded, which necessarily includes any incorporated substance or ingredient in the strength and quantity used in the particular product, not in the strength and quantity which such substances or ingredients may be used in some other products.

We must conclude, therefore, that the plaintiff has failed to sustain her burden of proving a breach of implied warranty, and the trial court should have granted the defendants' motion to set aside the verdict. Since the case must be remanded for a new trial, it is unnecessary to consider the remaining assignments of error.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.