RUSSELL SCHENCK ET AL. *v.* THEODORE PELKEY ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued October 3—decision released November 21, 1978

*Ralph P. Dupont,* with whom were *Kevin T. Nixon* and *Robert D. Tobin,* for the appellants (plaintiffs).

*Philip S. Walker,* with whom were *Dean M. Cordiano* and *Scott P. Moser,* for the appellee (defendant Sears, Roebuck & Company).

*Kevin T. Gormley* for the appellee (defendant Goshen Manufacturing Company).

PETERS, J. The plaintiff, Russell Schenck, and his father, John Schenck, brought an action in Superior Court against Goshen Manufacturing Company (hereinafter Goshen) and Sears, Roebuck & Company (hereinafter Sears), claiming damages and alleging three counts against each defendant: strict liability in tort, negligence, and breach of implied warranty. The defendants asserted the two special defenses of contributory negligence and assumption of risk. These allegations arose out of an accident that occurred when Russell Schenck used a pool slide in a swimming pool at the home of Theodore and Margaret Pelkey. The slide was manufactured by Goshen, purchased from Sears in 1967, and sold by the original purchasers to the Pelkeys in 1968. The initial complaint was brought against the Pelkeys alone, alleging only negligence. Prior to trial, Sears and Goshen were joined as defendants, the claim against the Pelkeys was settled, and the action was withdrawn as to them. On each of the three counts, the slide was alleged to be "defective" in that it contained no warning or directions for use concerning the size or depth of the pool with which it should be used, or concerning the hazards of head-

first sliding. The case was tried to a jury, which returned a verdict for the remaining defendants, responding in their favor in reply to specific interrogatories on all counts. The trial court denied the plaintiffs' motion to set aside the verdict, and the plaintiffs have appealed, citing as error that denial, certain evidentiary rulings, and portions of the charge to the jury.

From the evidence, the jury could have found the following facts, which were virtually uncontested: The plaintiff, Russell Schenck, sustained quadriplegic injuries on August 10, 1970, while going down a swimming pool slide at the home of a neighboring family, the Pelkeys; he was using the pool with their permission. Russell was then thirteen years old. The pool was above ground, three feet in height, not completely level, and contained 25 to 27 inches of water at the time of the accident. There was a two-foot gap between the end of the slide and the top of the water. Russell was using the pool and slide with a friend, David Hill, and with the Pelkeys' two young daughters. After using the slide twice in the sitting position, Russell began to slide down headfirst. He stopped his slide part way down by grabbing the side of the slide, then continued forward with his arms in back of his body. Without the protection of his hands and arms in front of him, he struck his head on the bottom of the pool, sustaining severe injury. Prior to Russell's injury, the pool slide had been used by the other children without injury, including at least one headfirst slide by David Hill. The slide had also been used without incident for over a year by both adults and children at the home of the previous owners, but they had used the slide with a larger, four-foot pool.

I

The plaintiffs assign as error a number of evidentiary rulings by the trial court: (1) The court admitted the original complaint against the Pelkeys into evidence on the issue of proximate cause; (2) the court excluded from evidence as full exhibits certain literature concerning the safety of pool· slides; and (3) the court permitted prior statements of a witness to be used to refresh her recollection. We find none of these rulings to have been in error.

The original complaint against the Pelkeys was introduced into evidence as a judicial admission on the issue of proximate cause. Statements in pleadings that are inconsistent with claims advanced at trial are admissible as judicial admissions. In *Tough* v. *Ives,* 162 Conn. 274, 283, 294 A.2d 67 (1972), we held that a plaintiff's complaint against the drivers of cars involved·in an accident was relevant in her subsequent suit against the highway commissioner alleging that icy road conditions had proximately caused her injury. For the same reason, the original complaint was correctly admitted in this case. See also *Kucza* v. *Stone,* 155 Conn. 194, 197, 230 A.2d 559 (1967). While *Tough* and *Kucza* involved admissions by way of pleadings from separate actions, that is a distinction without a difference, since "[a] superseded pleading remains in the case as a part of its history and is available to the adverse party as an admission." *Nichols* v. *Nichols,* 126 Conn. 614, 620, 13 A.2d 591 (1940).

Admission of the original complaint on the issue of proximate cause is not interdicted by § 52-216a

of the General Statutes.[1] That statute forbids introduction in a jury trial of a covenant not to sue, or a release of joint tortfeasor. It is clear that no such covenant or release was ever introduced into evidence in this case, despite the defendants' efforts to the contrary. It would be entirely speculative to assume that the jury, warned that the original complaint had been admitted solely on the issue of causation, would have drawn improper inferences concerning settlement.

The court made a number of evidentiary rulings concerning certain warnings, literature, standards, and test results relating to the safety of pool slides. Some proffered evidence was excluded as hearsay, other as too remote, immaterial, or irrelevant; its admissibility rested within the sound discretion of the trial court; *State* v. *Carbone,* 172 Conn. 242, 262, 374 A.2d 215 (1977), cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063; *Steiber* v. *Bridgeport,* 145 Conn. 363, 366, 143 A.2d 434 (1958). Standards promulgated by the Consumer Product Safety Commission in 1976, nine years after the sale of the slide and six years after the injury, were properly excluded as irrelevant under *Tomer* v.

---

[1] "[General Statutes] Sec. 52-216a. READING OF AGREEMENTS OR RELEASES TO JURY PROHIBITED. An agreement not to bring legal action by any tortfeasor or release of a tortfeasor in any cause of action, shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of such cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in such action be read or in any other way introduced to a jury, except the court at the conclusion of the trial may deduct from the verdict any amount of money received by any party to such action pursuant to such agreement not to sue or such release of claim. Nothing in this section shall prohibit the introduction of such agreement or release in a trial to the court."

*American Home Products Corporation,* 170 Conn. 681, 687, 368 A.2d 35 (1976), which held that "[s]ince the defendants could not be held to standards which exceeded the limits of scientific advances existing at the time of their allegedly tortious conduct, expert testimony tending to show the scope of duties owed could have been properly limited to scientific knowledge existing at that time." For similar reasons, the trial court acted within its discretion in admitting, only for the limited purpose of demonstrating feasibility of warning, the post-1970 warnings of another manufacturer of pool slides, and in excluding a potentially prejudicial film. See Tait & LaPlante, Handbook of Connecticut Evidence, § 9.1 (c) (1976).

The plaintiffs' final evidentiary claim on appeal is equally without merit, since again it concerns a matter entrusted to the sound discretion of the trial court. One of the plaintiffs' witnesses was a young girl, Tracey Pelkey, who was eight years old at the time of the accident, and fourteen years old at the time of the trial. Her testimony concerned the place on the slide where Russell had stopped before proceeding to push himself off into the pool. Her original testimony at trial allegedly differed from that contained in a prior deposition and in a prior statement temporally nearer to the time of the accident. The court permitted the defendants' counsel to refresh her recollection by showing her these allegedly contradictory statements, and she then modified her testimony. Whether there was a need for her recollection to be refreshed and whether in all the circumstances it was appropriate to do so were questions for the trial court's exercise of discretion. *States* v. *Grimes,* 154 Conn. 314, 322, 228 A.2d 141 (1966).

## II

The plaintiffs' assignments of error concerning the charge to the jury raise questions about the charge with respect to each of the plaintiffs' various counts. Since the jury returned verdicts for the defendants on each count, it is appropriate to consider separately objections to the charge on the issues of strict liability in tort, negligence, and breach of warranty.

With respect to strict liability in tort, the plaintiffs claim that the trial court erred in its statement of contributory negligence as a defense. The trial court charged, in accordance with *Hoelter* v. *Mohawk Service, Inc.*, 170 Conn. 495, 505–506, 365 A.2d 1064 (1976), that contributory negligence is a defense to strict liability when the plaintiff's conduct involves misuse of the product, but not when the conduct consists of a mere failure to discover the defect in the product or to guard against the possibility of its existence. This charge accurately stated the law of Connecticut at the time of the accident, and at the time of the trial. Thereafter, the General Assembly enacted a statute, 1977 Public Acts, No. 77-335, abolishing the defense of contributory negligence in causes of action based on strict tort liability. Although Public Act 77-335 is in terms applicable to all actions "pending on or brought after the effective date [June 7, 1977] of this act," that statute cannot govern this case, in which judgment was rendered more than five months before the effective date of the act. After the rendition of judgment, an action is no longer "pending." See *Salem Park, Inc.* v. *Town of Salem,* 149 Conn.

141, 144, 176 A.2d 571 (1961); *Walsh* v. *Gurman,* 132 Conn. 58, 65, 42 A.2d 362, cert. denied, 326 U.S. 719, 66 S. Ct. 24, 90 L. Ed. 426 (1945).

With respect to negligence, the plaintiffs claim error in the court's failure to charge on the defendants' duty to test their product to assure its safety. The plaintiffs requested the court to charge that "[w]here no standard of reasonable inspection or testing has been followed, the duty to exercise due care has been breached." The duty to test does not, however, exist in a vacuum. Rather, it is "one facet of the manufacturer's general duty to exercise reasonable care . . . . The rule is that a manufacturer has a duty to make such tests and inspections . . . as should be recognized as being reasonably necessary to secure the production of a safe product." Annot., Manufacturer's Duty to Test or Inspect as Affecting His Liability for Product-Caused Injury, 6 A.L.R.3d 91, 98 (1966). See *Putensen* v. *Clay Adams, Inc.,* 12 Cal. App. 3d 1062, 91 Cal. Rptr. 319 (1970); *LeBlanc* v. *Ford Motor Co.,* 346 Mass. 225, 191 N.E.2d 301 (1963). The question, initially, is not how much testing was required, but whether due care required any testing at all. The trial court therefore correctly charged the jury that "the test here is the care of a reasonably prudent corporation under the same circumstances. If under the circumstances you find [that] a test of said slide . . . would have been made by a reasonably prudent corporation, and the defendants [or] either of them, did not so test, it constitutes negligence."

With respect to implied warranty, the plaintiffs claim error because the court's charge required them to prove reliance by the original buyer on the skill and judgment of the defendant-seller, Sears. The court construed the plaintiffs' complaint, which

alleged an implied warranty "that said slide would be reasonably fit for the purpose for which it was purchased," to be a complaint invoking § 42a-2-315 of the General Statutes,[2] the section of the Uniform Commercial Code that describes an implied warranty of fitness for a particular purpose. Accordingly, the court instructed the jury that, on the warranty counts, the plaintiffs would have to establish that Sears had made public representations in its advertisements and publicity concerning the safety of its products, and that the buyer had in fact relied upon such representations. Since the plaintiffs had offered no evidence of reliance on public representations, the charge left the jury virtually no choice other than to find for the defendants on implied warranty. The plaintiffs claim that they were entitled to a charge based on the implied warranty of merchantability; General Statutes § 42a-2-314;[3] proof of which requires neither specific representations nor reliance.

The warranty of merchantability is the broadest and most important warranty in the Uniform Com-

[2] "[General Statutes] Sec. 42a-2-315. IMPLIED WARRANTY: FITNESS FOR PARTICULAR PURPOSE. Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 42a-2-316 an implied warranty that the goods shall be fit for such purpose."

[3] "[General Statutes] Sec. 42a-2-314. IMPLIED WARRANTY: MERCHANTABILITY; USAGE OF TRADE. (1) Unless excluded or modified as provided by section 42a-2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within

mercial Code. A warranty of merchantability is implied in any sale of goods by a merchant seller; the statutory standards for merchantability include, under § 42a-2-314 (2) (c), that the goods be "fit for the *ordinary* purposes for which such goods are used." (Emphasis added.) See White & Summers, Handbook of the Law under the Uniform Commercial Code, §§ 9-6, 9-7 (1972). The warranty of fitness for a *particular* purpose, § 42a-2-315, by contrast, is narrower, more specific, and more precise. Id., § 9-9. It requires that the seller have reason to know of a buyer's *particular* purpose and of the buyer's reliance on the seller's skill and judgment, as well as actual reliance in fact by the buyer. According to White & Summers, the warranty of fitness for a particular purpose appears most commonly in transactions between businessmen where goods are to be specially selected or manufactured. Id., § 9-9, pp. 297–98. Consumer transactions, in which warranty is pleaded as an alternative to strict liability, almost invariably involve the warranty of merchantability.

The complaint in this case, although it refers somewhat confusingly to "fitness" rather than to "merchantability," should have been understood to be pleading the broader rather than the narrower implied warranty. The purpose for which this slide was purchased was obviously the ordinary purpose

the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified as provided by section 42a-2-316 other implied warranties may arise from course of dealing or usage of trade."

for which such goods are intended; the plaintiffs never offered anything to the contrary in their pleadings[4] or in their proof at trial. "A dealer who sells articles which ordinarily are used in only one way impliedly warrants fitness for use in that particular way. The warranty is one of merchantability." *Crotty* v. *Shartenberg's-New Haven, Inc.*, 147 Conn. 460, 464, 162 A.2d 513 (1960). See also *Redfield* v. *Mead, Johnson & Co.*, 266 Or. 273, 512 P.2d 776 (1973); *Pacific Marine Schwabacher, Inc.* v. *Hydroswift Corporation*, 525 P.2d 615 (Utah 1974). Under modern rules of pleading, slight linguistic ambiguity should not be fatal to a cause of action. See *Schaller* v. *Roadside Inn, Inc.*, 154 Conn. 61, 64, 221 A.2d 263 (1966). The court was therefore in error in refusing, after due exception, to charge on the general implied warranty of merchantability.

The defendants argue that even if the instruction on implied warranty was erroneous, any error was harmless because of the substantial substantive overlap between strict liability and the implied warranty of merchantability. Whether the standard for defective goods under § 42a-2-314 (2) is fully coextensive with the standard for "a defective condition unreasonably dangerous" for strict liability under the Restatement (Second) of Torts, § 402A (1965), is a controversial question which we need not now address. It is true that the jury's findings for the defendants on strict liability might have come from a determination that the slide was not defective for tort or, inferentially, for warranty

---

[4] In a pretrial memorandum concerning the availability of the statute of limitations as a defense in this case, the trial judge characterized the plaintiffs' fourth and seventh counts as alleging "breach of an implied warranty of fitness for a particular purpose." We do not, however, consider this statement to be a controlling interpretation of the plaintiffs' pleadings.

purposes. But it is equally possible that the jury found for the defendants because the plaintiff's contributory negligence barred recovery. As the trial court charged, contributory negligence is not a defense to breach of implied warranty. The jury might consistently have found the slide to be defective, and yet have denied recovery on strict liability because of contributory negligence and on implied warranty because of the erroneous instruction concerning reliance. The error in this instruction was therefore clearly prejudicial and requires a new trial on the breach of warranty count.

### III

The plaintiffs' final assignment of error asks us to overrule the trial court's refusal to set aside the verdict as against the weight of the evidence. It is a well-established rule that in review of such decisions, " 'great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness.' " *Cicero* v. *E.B.K., Inc.*, 166 Conn. 490, 494, 352 A.2d 309 (1974); *Gosselin* v. *Perry*, 166 Conn. 152, 168, 348 A.2d 623 (1974). On the record before us, there appears no basis for overturning the conclusion of the trial court.

There is error in part; the judgment is affirmed except as regards the fourth and seventh counts, and as to those counts only a new trial is ordered.

In this opinion the other judges concurred.