[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before this court is the defendant's motion to strike numerous counts of the plaintiff's third amended complaint.[1] For reasons more fully set forth herein the motion is granted as to counts four, eight, sixteen, and twenty and as to the attorney's fees claimed in the prayer for relief, and the motion is denied as to counts two, five, six, seven, nine, ten, eleven, twelve, fourteen, seventeen, eighteen, nineteen, twenty, twenty-one and twenty-four.
FACTUAL BACKGROUND
The pertinent facts are as follows. On March 28, 1998, an explosion occurred at the residence of Theodore Augustyn (Augustyn) causing extensive property damage. Travelers Property and Casualty Insurance Corporation (Travelers) issued a homeowner's policy to Augustyn and/or one Henri Trepanier (Trepanier). Pursuant to the policy, Travelers paid Augustyn and/or Trepanier for said property damage.
On March 10, 2000, Travelers filed a twenty-four count third amended subrogation complaint against Yankee Gas Services Corporation (Yankee). In counts one through twelve of the third amended complaint, Travelers alleges that its insured was Augustyn, that Yankee sold and distributed natural gas to the Augustyn residence, and that the explosion resulted from a defect in the natural gas and/or a defect in the distribution system supplying the gas. The plaintiff alleges that these acts constitute a violation of the Connecticut Product Liability Act (CPLA) General Statutes § 52-572n, in that Yankee sold and delivered defective natural gas (counts one through four). The third amended complaint also alleges a violation of the CPLA in that Yankee sold and delivered a defective gas distribution system (counts five through eight). Finally, the third amended complaint alleges common law CT Page 6070 negligence (count nine); common law misrepresentation (count ten); common law breach of contract (count eleven); and common law breach of the implied warranty of merchantability (count twelve). In counts thirteen through twenty-four, Travelers pleads in the alternative that its insured was Trepanier but as to all other allegations, counts thirteen through twenty-four mirror counts one through twelve, respectively.
On September 30, 1999, Yankee filed a motion to strike count two and counts four through twelve with a supporting memorandum of law. Travelers has filed a memorandum in opposition.
LEGAL DISCUSSION
Motion to Strike
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted. . . . If the facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270-71,709 A.2d 558 (1999). "A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citations omitted; internal quotation marks omitted.) D'Amico v. Johnson,53 Conn. App. 855, 859, 733 A.2d 869 (1999).
Count Two [and Count Fourteen of Third Amended Complaint]: CPLAViolation
Yankee moves to strike count two on the ground that it fails to state a claim for violation of the CPLA because the scope of the CPLA is limited to defective products. Yankee argues that its allegedly defective distribution system is not a product within the meaning of the statute.
Travelers argues in opposition that Yankee is incorrect in its construction of count two: that count two alleges that Yankee violated the CPLA by supplying the Augustyn residence with defective gas not adefective gas system.
A product liability claim "includes all claims or actions brought for . . . property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, CT Page 6071 instructions, marketing, packaging or labeling of any product." (Internal quotation marks omitted.) General Statutes § 52-572m (b). Section 52-572m (a) defines "product seller" as "any person or entity, including a . . . distributor or retailer who is engaged in the. business of selling such products whether the sale is for resale or for use or consumption." General Statutes § 52-572m (a). "To maintain a product liability action under 52-572m et seq., the plaintiff must establish and prove, inter alia, that the defendant was engaged in the business of selling the product . . . [and that] the defect existed at the time of the sale. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Zichichi v. Middlesex MemorialHospital, 204 Conn. 399, 403, 528 A.2d 805 (1987). "Once a particular transaction is labeled a `service,' as opposed to a `sale' of a `product,' it is outside the purview of our product liability statute." Id.
In count two, [and count Fourteen of the Third Amended Complaint] which incorporates count one, [and count Thirteen of the Third Amended Complaint] Travelers alleges that Yankee is a seller of natural gas; that natural gas is a product; that Yankee sold this product to its customer, Augustyn; and that the explosion at Augustyn's residence resulted from the build up of this natural gas product. See third amended complaint, count two, ¶ 1. Travelers additionally alleges that Yankee is liable for violation of the CPLA by negligently failing "to exercise proper care in the sale, distribution, production, testing and/or inspection of the natural gas distributed to [Augustyn's residence.]" (Third amended complaint, count two, ¶ 10.) Count two alleges a violation of the CPLA based on Yankee's negligence in supplying defective gas. Because defective gas is, arguably, a product, Yankee's motion to strike count two is denied. The same ruling applies to count fourteen of the third amended complaint.
Count Four [and Count Sixteen of Third Amended Complaint]: CPLAViolations
Counts four and sixteen both claim violations of Connecticut Products Liability Act based upon the theory of breach of implied warranty of merchantability. Yankee argues that the allegations are legally insufficient because they fail to allege that Augustyn gave notice to Yankee of its breach of the warranty. Travelers argues in opposition that the complaint itself gives notice to Yankee of its breach.
A product liability claim includes "but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." CT Page 6072 General Statutes § 52-572m (b) "[T]he act was intended to merge various theories into one cause of action rather than to abolish all prior existing rights." Lynn v. Haybuster Mfg., Inc., 226 Conn. 282, 292,627 A.2d 1288 (1993). "The warranty of merchantability is the broadest and most important warranty in the Uniform Commercial Code [UCC]. A warranty of merchantability is implied in any sale of goods by merchant seller. . . ." Schenck v. Pelkey, 176 Conn. 245, 253-54, 405 A.2d 665
(1978). Merchantable goods are ones which "pass without objection in the trade under the contract description [and] . . . are fit for the ordinary purposes for which such goods are used. . . ." General Statutes § 42a-2-314 (2). In addition, in General Statutes § 42a-2-607, the portion of the UCC which governs the manner and effect of a buyer's rightful rejection of goods, "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy. . . ." In Goldwater v. Ollie's Garage, Superior Court, judicial district of New Haven at New Haven, Docket No. 357372 (June 5, 1995, Hartmere, J.), the court struck a claim for breach of the implied warranty of merchantability because it failed to allege that the buyer gave notice of the defect to the seller. See also Benchmark Building v.United Builders Supply Co., Inc., Superior Court, judicial district of Middlesex at Middletown, Docket No. 62896 (May 29, 1992, Austin, J.) (breach of warranty claim insufficient as failing to allege seller given notice)
Because counts four and sixteen fail to allege that Travelers gave notice to Yankee of the defective gas, they are insufficient to state a claim for breach of the implied warranty of merchantability. Therefore, Yankee's motion to strike counts four is granted. The same ruling applies to count sixteen in the third amended complaint.
Count Five through Eight [and Counts Seventeen through Twenty ofThird Amended Complaint]: Violations of CPLA
Yankee also moves to strike counts five through eight on the ground that each count fails to state a claim because the scope of the CPLA is limited to defective products and Yankee's allegedly defective distribution system is not a product within the meaning of the statute. In support, Yankee argues that because the CPLA does not define the term "product," this court must rely upon case law construing the term. It cites Zichichi v. Middlesex Memorial Hospital, supra, 204 Conn. 407, wherein the court held that blood products were not products within the meaning of the CPLA. Yankee also cites to the definition section of the larceny and robbery statute, General Statutes § 53a-118 (a)(1),[2]
which provides that when commodities such as gas are provided from an outside source by means of wire, pipes, conduits or other equipment, CT Page 6073 such rendition is a service and not a product. Finally, Yankee analogizes the term "product," to the term, goods, as the UCC defines goods. Yankee argues that even if the contract between Augustyn and Yankee were a mixed contract for goods and services, where such a contract necessitates providing materials which are only incidental to the main contract, the contract is not one for the sale of goods.
Travelers argues in opposition that the counts are legally sufficient because each alleges the requisite elements of a product liability claim: that the defendant is a product seller; that the defendant sold a defective product; and that the defendant is liable for the resulting damage. Travelers argues that because the CPLA does not define the difference between a product and a service, and because the issue of whether a gas distribution system is a product is an issue of first impression in Connecticut, Yankee's motion to strike should be denied. In so concluding, Travelers argues that the very purpose of a motion to strike is to test whether the state is ready to recognize a newly emerging ground of liability.
The CPLA does not define the term "product." "[T]herefore, the definition of what . . . a product is, has been developed entirely by case law." Williams v. McDonalds' of Torrington, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 562657 (May 8, 1997, Hale, J.) (19 Conn.L.Rptr. 427, 427). See Bobryk v.Lincoln Amusements, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 547084 (January 5, 1996,Sheldon, J.) (15 Conn.L.Rptr. 617, 619) (defining product as "any item, thing, or commodity which, upon acquiring its physical existence and identity, through the process of manufacture or otherwise, is put in the stream of commerce either by sale, for use, consumption or resale or by lease or bailment"); Dumitrie v. Fernap, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 288824 (April 25, 1994,Pittman, J.) (11 Conn.L.Rptr. 449, 450) (adopting the Model Uniform Product Liability Act's definition of a product as "an object possessing intrinsic value, capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce"); Restatement (Third), Torts, Products Liability § 19(a), p. 267 (1997) ("A product is tangible personal property distributed commercially for use or consumption.")
As a threshold matter, the parties present the court with an issue of first impression, specifically, whether a gas distribution system, through which a utility company provides gas to a residence, is a product within the meaning of the CPLA. This court approaches the issue fully mindful of its duty on a motion to strike: "[i]f facts provable in the complaint would support a cause of action, the motion to strike must CT Page 6074 be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates, supra, 244 Conn. 271. Therefore, each count will be addressed individually.
Count Five [and Count Seventeen of the Third Amended Complaint]
In count five [and count seventeen of the third amended complaint], Travelers allege: (1) that Yankee is a seller and distributor of its gas distribution systems; (2) that the gas distribution system . . . included but was not limited to "[t]he gas pipes connected to [the Augustyn or Trepanier] residence" and "[t]he gas meter installed in [the Augustyn or Trepanier] residence"; (3) that the gas distribution system was distributed to [Augustyn or Trepanier] as it was "connected to the residence"; (4) that the gas pipes and meter were defective and unreasonably dangerous; and (5) that the defect in the gas pipes and meter existed when they left Yankee's control.
Travelers has sufficiently alleged that its gas distribution system is a product as it is composed of gas pipes and a gas meter distributed to the Augustyn or Trepanier residence. (See Restatement (Third), supra, § 19(a), p. 267 ("A product is tangible personal property distributed commercially for use or consumption.") Travelers has also sufficiently pled that Yankee was engaged in the business of selling a product, which product had a defect at the time of sale. See Zichichi v.Middlesex Memorial Hospital, supra, 204 Conn. 403. Accordingly, Yankee's motion to strike count five is denied.[3] This ruling also applies to count seventeen of the third amended complaint.
Count Six [and Count Eighteen of the Third Amended Complaint]
In counts six and eighteen of the third amended complaint Travelers brings a claim for violation of the CPLA based on negligence. Travelers realleges the allegations made in counts five and seventeen and additionally alleges that Yankee "failed to exercise proper care in the manufacture, construction, design, assembly, testing and/or inspection of the gas meter." (Count six, ¶ 12 b.) The analysis the court employed in denying Yankee's motion to strike count five is herein incorporated by reference. Consequently, Yankee's motion to strike count six is denied. The ruling also applies to count eighteen of the third amended complaint.
Count Seven [and Count Nineteen of the Third Amended Complaint]
In counts seven and nineteen in the third amended complaint Travelers brings a claim for violation of the CPLA based on misrepresentation. Travelers realleges the allegations made in counts five and seventeen of CT Page 6075 the third amended complaint and additionally alleges that Yankee: (1) made a misrepresentation to [Augustyn or Trepanier] "that the gas distribution system, including, but not limited to the gas pipes . . . and the gas meter . . . were safe"; (2) made said misrepresentation to induce [Augustyn's or Trepanier's] reliance; and (3) did induce [Augustyn's or Trepanier's] reliance. The analysis the court employed in, denying Yankee's motion to strike counts five and seventeen is herein incorporated by reference. Therefore, Yankee's motion to strike count seven is denied. This ruling applies to count nineteen of the third amended complaint.
Count Eight [and Count Twenty of the Third Amended Complaint]
In counts eight and twenty, Travelers brings a claim for violation of the CPLA based on breach of the implied warranty of merchantability. Travelers realleges the allegations made in counts five and seventeen and additionally alleges that Yankee "sold and distributed the gas distribution system for the ordinary purpose of distributing gas to [the Augustyn or Trepanier residence]." Travelers fails, however, to allege that it gave notice of the defect to Yankee. See Goldwater v. Ollie'sGarage, supra, Superior Court, Docket No. 357372 (striking breach of the implied warranty of merchantability claim because it failed to allege buyer gave notice of the defect to the seller) Because counts eight and twenty fail to allege that Travelers gave notice to Yankee of the defective gas distribution system, they are insufficient to state a claim for breach of the implied warranty of merchantability. For this reason, Yankee's motion to strike count eight is granted. The ruling also applies to count twenty in the third amended complaint.
Counts Nine through Twelve [and Twenty-One through Twenty-Four]:Common Law Claims
Yankee also moves to strike counts nine through twelve nine [and twenty-one through twenty-four in the third amended complaint] on the ground that each fails to state a claim upon which relief can be granted. Yankee argues that to the extent that these common law counts duplicate allegations made in counts five through eight [and seventeen through twenty of the third amended complaint] they fall within the scope of the CPLA. Yankee argues that the common law claims are thus, preempted by the CPLA as it is the exclusive remedy for claims falling within its scope.
Travelers argues in opposition that pursuant to Practice Book § 10- 25, it is entitled to plead its claims in the alternative under the common law and under the CPLA. Travelers claims that such alternative pleading is particularly important in the present case because the CT Page 6076 question of whether a gas distribution system is a product is an issue of first impression.
General Statutes § 52-572n provides that when a product liability claim is pleaded it "shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." In Winslow v. Lewis-Shepard,Inc., 212 Conn. 462, 471, 562 A.2d 517 (1989), the court interpreted § 52-572n to mean that the legislature intended the CPLA to be the exclusive remedy for claims within it scope. The plaintiff had been injured at his workplace when he operated a defective "order picker"; see id., 464; the plaintiff did not bring a product liability claim, but rather brought common law claims for negligence, strict liability, breach of express warranty of merchantability and breach of implied warranties of merchantability and fitness for purpose. See id.
The present case is distinguishable from Winslow wherein the defective "order picker" was a product within the scope of the CPLA as a matter of law, or at the very least there was no dispute that the "order picker" was a product. The question in Winslow was whether the CPLA preempted common law causes of action alleging facts within the scope of the CPLA. See id., 464.
At this stage of the proceeding, this court cannot decide as a matterof law, whether the gas distribution system is a product within the meaning of the CPLA. Because this court cannot decide as a matter of law that the gas distribution system is a product, it cannot decide that the CPLA provides the exclusive remedy for Travelers' claims. See Skerritt v.Sandoz Nutrition Corp., Superior Court, judicial district of New Haven, Docket No. 305253 (March 26, 1991, Berdon, J.) (finding that where defendant has neither admitted its status as a product seller nor admitted that the claim is within the CPLA, plaintiff may plead common law claims in the alternative); see also Practice Book § 10-25
(stating that a "plaintiff may claim alternative relief, based upon an alternative construction of the cause of action"). Therefore, the court denies Yankee's motion to strike counts nine through twelve. This ruling also applies to counts twenty-one through twenty-four of the third amended complaint.
Attorney's Fees
Yankee also moves to strike Travelers' claim for attorney's fees in its prayer for relief as to counts one through eight [and thirteen through twenty of the third amended complaint] "because Travelers, as subrogee of its insured's rights, is entitled to recover no more than the amount it paid out to its insured; (2) this claim calls for a CT Page 6077 judicial determination that may only be made post judgment; and (3) the allegations in the Complaint do not support this claim."
Travelers argues in opposition that pursuant to Practice Book § 10- 20, its complaint contains a demand for relief, stating the remedy or remedies sought. It argues that it is seeking attorney's fees because such fees are authorized as relief for product liability claims by General Statutes § 52-240a.
General Statutes § 52-240a provides as follows: "If the court determines that the claim or defense is frivolous, the court may award reasonable attorney's fees to the prevailing party in a products liability action."
"The proper way to request a claim for attorney's fees [however] is by a motion for award of attorney's fees, following the parties' presentation of evidence, based on a claim that the party's cause of action or defense was frivolous." McCurry v. Home Depot, Inc., Superior Court, judicial district of Waterbury, Docket No. 120316 (September 7, 1994, Sylvester, J.) (striking claim for attorney's fees as complaint failed to allege that defenses were frivolous). See also Pontillo v.West Farms Associates, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 360344 (April 13, 1994, Aurigemma, J.) (awarding attorney's fees based upon defendant's motion for award of attorney's fees after finding that complaint under CPLA was frivolous).
Counts one through eight [and thirteen through twenty of the third amended complaint] fail to allege that Yankee has presented frivolous defenses. Thus, this court grants Yankee's motion to strike Travelers' claim for attorney's fees in its prayer for relief.
CONCLUSION
This court denies Yankee's motion to strike counts two, five, six, seven, nine, ten, eleven, and twelve. This ruling also applies to counts fourteen, seventeen, eighteen, nineteen, twenty-one, twenty-two and twenty-four of the third amended complaint. This court grants Yankee's motion to strike counts four, eight, twelve, and the attorney's fees claimed in the prayer for relief. This ruling also applies to counts fifteen, twenty and twenty-four of the third amended complaint.
Robinson, J.